MARJORIE E. BLACKBURN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent RAY C. BLACKBURN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Blackburn v. Commissioner
Docket Nos. 2189-70, 2190-70.
United States Tax Court
T.C. Memo 1973-254; 1973 Tax Ct. Memo LEXIS 33; 32 T.C.M. (CCH) 1194; T.C.M. (RIA) 73254; November 21, 1973, Filed Ray C. Blackburn, pro se. J. Edward Friedland, for the respondent. 2 SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: *34 [1] Respondent determined a deficiency in the income tax of petitioner, Marjorie E. Blackburn, for the calendar year 1966 in the amount of $1,011.06 and a deficiency in the income tax of petitioner, Ray C. Blackburn, for the calendar year 1966 in the amount of $1,675.98. [1]
The issues for decision are: (1) Whether Marjorie E. Blackburn received taxable income in 1966 by the payment by a corporation of which she was president of fees for legal services rendered on her behalf in defending her title to stock in the corporation. (2) In the alternative, whether Ray C. Blackburn received taxable income in 1966 by the payment by a corporation of which he was general manager of fees for legal services rendered on his behalf in defending a personal suit against him. (3) Whether petitioner Ray C. Blackburn is entitled *35 to deduct $1,508 or any part thereof claimed 3 by him to be business expenses paid by him as general manager of a corporation. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioner, Marjorie E. Blackburn, is the wife of petitioner Ray C. Blackburn, and they both resided in Cleveland, Ohio at the time of the filing of the petitions in this case. Marjorie E. Blackburn (hereinafter referred to as Marjorie) and Ray C. Blackburn (hereinafter referred to as Ray) each filed a separate Federal income tax return for the taxable year 1966 with the district director of internal revenue at Cleveland, Ohio. In January of 1962, Marjorie took title to certain assets of Secruity Septic Tank Company which had been purchased at a bankruptcy sale for $20,000. On March 22, 1962, Ray and Marjorie formed a corporation, the Security Sewage Equipment Company, Ray becoming the corporation's general manager and Marjorie its president. Marjorie transferred the assets purchased at the bankruptcy sale to the new corporation in exchange for 570 shares of stock. Although some time prior to 4 1966, 270 shares of this stock were transferred to the 9-year-old *36 son of Marjorie and Ray, Marjorie, at all times here pertinent, was the major stockholder of the corporation. Some time in 1962 a dispute arose between Roy C. Blackburn (also known as Conway Blackburn and hereinafter referred to as Roy), a brother of Ray's, and Ray and Marjorie. Roy claimed an interest in the corporation, based on $8,100 which his father had advanced toward the purchase of the assets which were transferred to the corporation. Roy filed suit in the Court of Common Pleas, Cuyahoga County, Ohio, on June 21, 1962, naming as defendants Marjorie, Ray, the Security Sewage Equipment Company, Sidney Reaven, Maurice P. Neimann and George Rosenfeld. The latter three defendants were minor shareholders and employees of the corporation, George Rosenfeld, who owned 20 shares of the stock of the corporation, was its secretary. The case was dismissed as to Sidney Reaven and Maurice P. Neimann soon after the suit was filed and was dismissed as to George Rosenfeld upon his motion filed at the conclusion of the trial of the case. 5 In his petition Roy alleged: Plaintiff further says that on or about October 1, 1961, he and the defendant Ray C. Blackburn entered into an *37 agreement to seek to purchase the assets of the Security Septic Tank Co. which had been adjudicated a bankrupt on September 27, 1961. It was agreed that if they were successful in purchasing the assets of said bankrupt company that it would be operated by the plaintiff Conway Blackburn and the defendant Ray C. Blackburn as a partnership with each having fifty (50%) percent interest therein. Plaintiff further says that pursuant to the above mentioned agreement, he accepted employment as manager of the Security Septic Tank Company by the trustee in Bankruptcy for said company in order to preserve the assets of said bankrupt company for their eventual purchase by plaintiff Conway Blackburn and defendant Ray C. Blackburn. Plaintiff further says that on or about January 17, 1962, purchase of the assets of the Security Septic Tank Company was consummated on behalf of plaintiff and defendant Ray C. Blackburn. The purchase price being Twenty Thousand Dollars ($20,000.00) of which Eight Thousand One Hundred Dollars ($8,100.00) was contributed by the plaintiff and Eleven Thousand Nine Hundred Dollars ($11,900.00) by the defendant Ray C. Blackburn. On that date, defendant Ray C. Blackburn *38 acting as the Agent of the plaintiff and himself pursuant to the agreement caused the assets to be transferred to the name of his wife, Marjorie B. Blackburn, for and on behalf of all the parties. Plaintiff further states that he and defendant Ray C. Blackburn commenced the operation of said business under their joint management and that the plaintiff rendered services to the business continuously until 6 the 18th day of May, 1962, at which time, he was ordered off the premises by defendant George Rosenfeld. Plaintiff further says that he has information that the defendants entered into a fraudulent scheme, plan and conspiracy to deprive him of his rightful interest in the business and without notice of any kind to him, purportedly have formed a corporation known as the Security Sewage Equipment Company and have attempted to fraudulently and in violation of their fiduciary duty to transfer the assets of the business to said purported corporation. Plaintiff further says that the defendants, Ray C. Blackburn and Marjorie B. Blackburn have fraudulently and in violation of the law attempted to sell securities in the Security Sewage Equipment Company to various persons including *39 defendants George Rosenfeld and Sidney Reaven and that the defendants have been operating the business and using the assets of The Security Septic Tank Company without the permission or consent of the plaintiff and conducting said business adversely to the plaintiff's detriment. Plaintiff further says that the defendants are appropriating to their own use the property and assets of the business to the irreparable loss and damage to the plaintiff, and that the defendants are fraudulently converting funds from the business to their own use and have failed, refused and neglected to account for said funds, and have refused to permit the plaintiff to exercise his rights in said business which include employment by said partnership and have failed and refused to compensate the plaintiff for the services which he has heretofore rendered. Plaintiff further says that defendants are excluding the plaintiff from his proper share in the management of the business and 7 that the hostility and loss of confidence existing between the plaintiff and the defendants is injurious to the business which is suffering great and irreparable loss thereby. In his prayer for relief, Roy asked the *40 court for an accounting and the appointment of a receiver for the assets of the company, for an order determining the equitable interest of plaintiff and defendants in the company, and "for such other and further relief * * * which would be equitable in the premises" together with costs and attorney fees. In 1966 the case came to trial. Ray, who was then employed by the corporation as its general manager, retained the services of two attorneys to handle the court proceeding on behalf of the corporation, himself, and Marjorie E. Blackburn. Eugene Sidney Bayer, who had represented all defendants in the pretrial stage of the lawsuit, entered his appearance at the trial for Marjorie, Ray, and the corporation. Jack Day, an experienced trial attorney, was retained at the trial state of the lawsuit to join Bayer as defense counsel, and he entered his appearance on behalf of George Rosenfeld. The entire trial was conducted jointly by these two attorneys. 8 On December 15, 1966, the Court of Common Pleas rendered its decision in the case of Conway Blackburn v. Ray C. Blackburn, et al, finding the following facts: 1. Roy C. Blackburn is a brother of Ray C. Blackburn who was *41 not a stockholder of the Company as of March 28, 1962. 2. Defendant Marjorie Blackburn, wife of Ray C. Blackburn, was a stockholder of The Security Sewage Equipment Company as of March 28, 1962. 3. Marjorie Blackburn was issued 570 shares of stock at the initial meeting of shareholders of The Security Sewage Equipment Company. 4. An agreement was entered into among Ray C. Blackburn, Roy C. Blackburn and Ray S. Blackburn [father of Ray and Roy] which was finalized on or about January 16, 1962. 5. The assets of the Bankrupt Estate were purchased by Ray C. Blackburn in behalf of himself and his brother Roy C., but by mutual agreement placed in the name of Marjorie Blackburn for the cash consideration of $20,000.00. 6. The cash investment made by Roy C. or in his behalf toward the purchase of the company was $8,100.00. 7. Ray C. managed the business from January 17, 1962 to March 28, 1962, during the period when the enterprise was operating as dba The Sewage Equipment Co., and that the value of his services was $2,000.00. 8. That Ray C. and his wife Marjorie borrowed $10,500.00 which was assumed and paid by the corporation. 9 Roy C. was not manager *42 but did help in running the business from January 17, 1962 to March 28, 1962. 9. Ray C. expended $5,000.00 for attorney fees connected with the purchase of the assets - the legal problem rising therefore and the transformation of the business into a corporation - without recoupment. 10. The capital of the company, both cash ($20,000.00) and services ($5,000.00 and $2,000.00), was $27,000.00. 11. The services of George Rosenfeld and Marjorie Blackburn during this period is of limited and non-measurable value. The conclusions of law were as follows: 1. Agreement was not one of partnership but one of joint ownership or joint enterprise. 2. Ray C. or his designee (Marjorie Blackburn) is entitled to a capital credit of $7,000.00 ($5,000.00 for attorney fees paid and $2,000.00 for services rendered). 3. Neither Ray C. nor his wife (Marjorie) is entitled to any stock credit for $10,500.00 borrowed by them individually but assumed and paid by the company. 4. Roy C. is not entitled to credit for his services from period of January 17 to March 28, 1962, because he applied for and was receiving unemployment benefits for this period. He who seeks equity must do so *43 with clean hands. 5. Roy C. was deprived of and is entitled to 171 shares of stock in Security Sewage Equipment Company, which is the ratio of the amount paid in his behalf ($8,100.00) compared to the total investment ($27,000.00), or 30% of the total shares issued to Ray C. or his designee Marjorie (570). 10 6. Marjorie Blackburn as holder of the original 570 shares must return 171 of those shares to the corporation for reissue to Roy C. Blackburn. 7. Costs to be assessed one-half against the corporation and one-half to be split equally between Ray C. and Marjorie Blackburn. 8. Attorney fees be denied. 9. Request for appointment of receiver be overruled. In accord with this holding of the court, 30 percent of the stock, or 171 of the 570 shares issued to Marjorie upon incorporation, were transferred back to the corporation for reissue to Roy. Ray and Marjorie appealed the decision to the Ohio Court of Appeals, where it was affirmed, then to the Ohio Supreme Court where such appeal was dismissed as having been improvidently allowed. Court costs in both the Court of Common Pleas and Court of Appeals proceedings were, by order of such courts, assessed one-half *44 against the corporation and one-half to be split equally between Ray and Marjorie. In each proceeding Roy's motion requesting the appointment of a receiver was overruled. The corporation paid legal fees incurred in defending the lawsuit in the Court of Common Pleas 11 directly to the respective attorneys in the amount of $2,141.25 to Bayer and $4,500 to Jack Day. Respondent in his notice of deficiency to Marjorie determined that 50 percent of the legal fees paid by the corporation was paid for her benefit and that this payment was income to her includable in her gross income under Section 61. [2] Respondent in his notice of deficiency to Ray made a similar determination but at the trial and on brief states that these determinations are alternative. Respondent states that he concedes that one-half of the fees were paid by the corporation on its own behalf or on behalf of defendants other than petitioners herein. During 1966 Ray paid $1,508 for travel, entertainment and other items that he claimed as deductions on his Federal income tax return as "Business Expenses." These amounts *45 were itemized on his return as follows: 12 Gift for Secretary and Bookkeeper
$10.00
Gift for Business Associate for services to Company
50.00
Party for stockholders and wives
60.00
Meals bought for company attorney and wife, customers, employees' meals, parking and lodging while out of town on business
560.00
Expense of Court record for suit for partnership in business
175.00
Telephone for business (out of town and home)
35.00
Membership in state and national Sanitarians Association
12.00
Safety Deposit Box
6.00
Use of car for business, 6,000 miles at 10 cents per mile
600.00
$1,508.00
Ray had lost all of his records in a flood before the trial of this case. Ray was not reimbursed for these expenses by the corporation. Respondent in his notice of deficiency to Ray disallowed the claimed deduction for these expenses "because it has not been established that the amount constitutes your ordinary and necessary business expense under Section 162 and Section 274 * * *." OPINION Respondent's primary position is that 50 percent of the legal fees paid by the corporation in 1966, in the amount of $3,320.63, was paid on behalf of 13 Marjorie *46 in connection with her defense of title to her shares of stock in the corporation. In the alternative, respondent contends that this same amount of legal fees was paid by the corporation in 1966 on behalf of Ray in connection with his defense of a personal lawsuit. Petitioners' primary contention is that the entire amount of the legal fees paid by the corporation was paid for its own defense in the lawsuit and is deductible as ordinary and necessary business expenses. Petitioners argue that the appointment of a receiver and an accounting, if Roy had been successful in this aspect of his suit, would have disrupted normal business operations and perhaps have harmed the reputation of the company. We agree with petitioners that it was vital that the corporation enter an appearance and defend itself in the suit brought by Roy, incurring and paying the legal expenses necessary to its defense. Respondent also recognizes that some of the legal expenses paid by the corporation were for its own defense and only contends that one-half of the $6,641.25 paid by the corporation was expended on 14 behalf of petitioners. Many of the issues before the Court of Common Pleas dealt with allegedly *47 fraudulent and illegal acts by Marjorie and Ray individually. Also the suit involved the attempt by Roy to obtain some of the stock held by Marjorie. These were allegations affecting Marjorie and Ray in their capacities as officers, employees, or stockholders of the corporation. The attorneys hired by Ray defended Marjorie and Ray, the corporation, and several minority shareholders. A large part of the legal fees was expended for legal services for the benefit of Marjorie and Ray. We find that respondent's determination that 50 percent of the amount paid by the corporation was for the benefit of the petitioners is fair and reasonable. Petitioners have not offered any evidence that would justify a different allocation. In reaching this conclusion we have not ignored Ray's testimony that Jack Day entered his appearance in the trial on behalf of George Rosenfeld and the other minority shareholders. However, we have also considered Ray's testimony that Day took an active part throughout the trial and that Day was hired to assist the less experienced lawyer, Bayer, in conducting 15 the entire trial. On the basis of Ray's testimony we conclude that the fee paid to Day, as well *48 as that paid Bayer, is subject to allocation between the corporation and the petitioners. Although we agree with respondent that 50 percent of the legal fees paid by the corporation was for the benefit of petitioners, we do not agree that this entire amount was for the benfit of either Marjorie or Ray. In our view, both Marjorie and Ray were benefited by the payment of legal fees.Both petitioners were charged with fraudulent conduct and illegal acts. We have no evidence in the record which would indicate that a higher percentage of the fees was expended for the benefit of one of the petitioners than for the other. The Court of Common Pleas assessed costs among the parties by allocating 50 percent to the corporation and 25 percent each to Marjorie and Ray. We find similarly that 25 percent of the total legal fees paid by the corporation was for the benefit of Marjorie and 25 percent for the benefit of Ray.Petitioners contend that no portion of the legal fees paid by the corporation constitutes income to either of them. In effect, they 16 are contending that if they are considered to have received income by the corporation's paying the legal fees, they should be likewise *49 considered to have paid them and are entitled to deduct them as ordinary and necessary business expenses. Respondent contends that the legal fees paid for Marjorie's benefit must be capitalized by her, since the fees were expended in defense of her title to stock in Security Sewage. Porter Royalty Pool, Inc., 7 T.C. 685, 700 (1946), affd. 165 F.2d 933 (C.A. 6, 1948); Safety Tube Corporation, 8 T.C. 757, 762-763 (1947), affd. 168 F.2d 787 (C.A. 6, 1948). In our view, part of the legal fees paid for Marjorie's benefit was paid in defense of her title to stock and part in defense of the allegations of fraud and illegal conduct on her part, but the record affords no clear basis for allocating. Using our best judgment, based on the evidence there is before use, we find that one-half of the $1,660 fee paid on behalf of Marjorie must be capitalized by her as a payment in defense of her title to stock. We find that the other one-half of the legal fees paid for the benefit 17 of Marjorie and all the legal fees paid for the benefit of Ray are deductible as business expenses. [3] *50 In the instant case the contrary is true. Marjorie and Ray were participants in a business venture as well as corporate executives, and the claims of fraud against them arose directly out of their activity of buying, incorporating, selling stock of, and operating a business. Here, as in Commissioner v. Heininger, 320 U.S. 467 (1943), there can be no doubt that the legal expenses to defend against claims of fraud in connection with petitioners' business were directly connected with carrying on their business. 19 In Commissioner v. Tellier, 383 U.S. 687 (1966), holding that the taxpayer was entitled to deduct legal expenses incurred in his unsuccessful defense of a criminal prosecution for securities and mail fraud, the Court stated, at 689: * * * The criminal charges against…[the taxpayer] found their source in his business activities as a securities dealer. The…[taxpayer's] legal fees, paid in defense against those charges, therefore clearly qualify under Gilmore as "expenses paid or incurred * * * in carrying on any trade or business" within the meaning of *51 § 162(a). Likewise here, the civil fraud action against petitioners had its source in their business activities, and the legal fees paid in defense of this action against them are clearly deductible business expenses, except of course the portion of the legal expenses of Marjorie which was for defense of her title to stock and is not deductible but must be capitalized. We therefore conclude that 50 percent of the legal fees paid by Security Sewage was paid on behalf of petitioners and constitutes income to them but that, except for the one-half of her share of the cost of the litigation which Marjorie must capitalize, each petitioner is entitled to deduct the amount of the 20 legal fees paid on his behalf as a business expenditure. Therefore, Marjorie's income as reported is increased by only $830 because of the payment by the corporation of legal fees on her behalf and Ray's income as reported is not increased since he is entitled to deduct from his income the same amount he is required to include. The second issue before us involves whether Ray is entitled to deduct all or any part of the $1,508 claimed on his return for 1966 as business expenses. Respondent contends *52 that these claimed deductions must be disallowed in their entirety because petitioner has not established that they were ordinary and necessary expenses to him or that the amounts were expended for the purposes designated as required under sections 162 and 274 of the Code. Respondent further contends that the amounts claimed, if business expenses at all, were business expenses of the corporation, Security Sewage, which expenses petitioner voluntarily assumed. Section 162 of the Internal Revenue Code of 1954 permits a deduction for all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. 21 Section 274 of the Code specifically deals with the deductibility of expenses for travel, for gifts, and for entertainment and facilities used in connection therewith. In John L. Ashby, 50 T.C. 409 (1968), this Court said the following, at 414: In general, section 274 provides that to be deductible an item *53 with respect to entertainment must be shown to be directly related to or, under specified circumstances, associated with the active conduct of the taxpayer's trade or business, and that an item with respect to a facility used in connection with entertainment is deductible only if it is shown that the facility was used primarily for the furtherance of the taxpayer's trade or business and that the item was directly related to the active conduct of the business. Section 274 also lays down strict requirements with respect to substantiation as a prerequisite to deductibility. It provides that an item is not deductible unless the taxpayer substantiates by adequate records, or by sufficient evidence corroborating his own statement, the amount of the expense or other item, the time and place of the entertainment or use of the facility, the business purpose of the expense or item, and the business relationship to the taxpayer of the persons entertained or who used the facility. The congressional committee reports [footnote omitted] show that the substantiation requirements of section 274 contemplate more detailed recordkeeping than was common prior to the time of the enactment of section *54 274, and that it was the intention of Congress that no deduction should be allowed solely on the basis of a taxpayer's unsupported self-serving testimony. * * * 22 Petitioner has presented no evidence to support his own testimony. He stated that his records were destroyed in a flood but has no explanation as to the lack of any other corroborating evidence as to the claimed expenses for gifts, entertainment and travel. The items claimed by petitioner to be deductible for gifts, entertainment and travel are disallowed for failure of substantiation in accordance with section 274. Petitioner did not offer proof of the business nature of the claimed telephone expense or the claimed automobile expense, or of the business use, if any, of the safety deposit box. We therefore sustain respondent's disallowance of these claimed deductions for lack of proof of the business connection, if any, of the expenses. The two remaining items of claimed expense are $175 for a transcript of the court record, apparently in the case brought by Roy, and $12 membership dues in Sanitarians Association. Although the record is not completely clear as to the business nature of these expenses, the scales *55 tip somewhat in petitioner's favor as to the $175 being a proper deduction for the same reason that the legal fees paid for Ray's 23 benefit are proper deductions. Ray's occupation as general manager of Security Sewage is some indication that membership in the Sanitarians Association is a proper business expense deduction for him. We therefore hold that Ray properly deducted the $175 paid for a transcript and the $12 paid as membership fee, but sustain respondent's disallowance of all the balance of Ray's claimed deductions of business expenses of $1,508. Decisions will be entered under Rule 50. Footnotes
1. Pursuant to notices of reassignment sent to both parties, these cases were reassigned by the Chief Judge on August 9,1973, from Judge Austin Hoyt↩ to Judge Irene F. Scott for disposition. Petitioner Marjorie E. Blackburn filed no objection to the reassignment. Petitioner Ray C. Blackburn did object to the reassignment, but his objection was not timely filed. 2. All references are to the Internal Revenue Code of 1954 unless otherwise indicated. ↩
3. Both Ray and Marjorie testified that Ray had no title to defend, legal or equitable, in Security Sewage. While there is evidence that he furnished some consideration for the purchase of assets transferred to Security Sewage, and there is no direct showing that he made a gift of these assets to his wife or the corporation, since respondent on brief apparently accepted the testimony and contention of the parties that only Marjorie had a stock interest in the corporation to defend, we do not consider that an issue is before us as to whether Ray had a stock interest in the corporation. Respondent takes the position that the legal fees paid for the benefit of Ray were for nondeductible personal expenses. In United States v. Gilmore, 372 U.S. 39, 40 (1963), it was held that the characterization of the litigation costs of resisting a claim depends on whether or not the claim arises in connection with the taxpayer's profit-seeking activities. In Gilmore, the taxpayer deducted fees paid to his divorce lawyer and justified the deduction as money spent for the conservation of income-producing property, i.e. to defend against his wife's community property claims respecting his stockholdings. The court rejected his argument in favor of the view that "the origin and character of the 18 claim with respect to which an expense was incurred, rather than its potential consequences upon the fortunes of the taxpayer, is the controlling basic test of whether the expense was "business' or "personal" and hence whether it is deductible or not under section 23(a) (2)." Section 23(a) (2), I.R.C. 1939, is the predecessor to section 162. [4]↩ In applying this test, the court found that the wife's claims stemmed entirely from the marital relationship and not from any income-producing activity of the taxpayer and therefore the legal expenses were not deductible.