WILLIAM A. GOSHORN AND VIRGINIA O. GOSHORN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Goshorn v. Commissioner
Docket No. 22635-91
United States Tax Court
T.C. Memo 1993-578; 1993 Tax Ct. Memo LEXIS 589; 66 T.C.M. (CCH) 1499; December 7, 1993, Filed *589 Decision will be entered under Rule 155. For petitioners: Robert L. Eberhart. For respondent: John J. Boyle. POWELL
POWELL
MEMORANDUM OPINION POWELL, Special Trial Judge: This case was assigned pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182. [1]
By a notice of deficiency issued on July 11, 1991, respondent determined a deficiency in petitioners' 1988 Federal income tax liability and an addition to tax under section 6653(a)(1)(A) in the respective amounts of $ 5,988 and $ 299. Petitioners filed a timely petition with this Court. Petitioners resided in Old Greenwich, Connecticut, at the time they filed their petition. After concessions, [2] the issue is whether a business loss claimed by petitioners should be disallowed under the passive activity loss provisions of section 469. *590 The facts may be summarized as follows. William A. Goshorn (hereinafter petitioner) and Virginia O. Goshorn filed a joint Federal income tax return for the year 1988. In 1984, petitioner had purchased a 28-foot sailboat, the Force 10, for approximately $ 50,000. At the time, petitioner resided in Dallas, Texas. Subsequently, his employer, United Parcel Service, transferred him to Connecticut. Petitioner left the Force 10 at Lake Texoma near Dallas and entered into an arrangement with Cedar Mills Marina (the Marina) to rent out the boat for charter. Customers interested in chartering boats from the Marina would call the Marina's office to check a boat's availability, reserve charter time, and pay a deposit to the Marina. On the day of the charter, the Marina's crew would spend 30 to 90 minutes preparing the boat. The Marina's charter representative would spend 30 to 45 minutes performing a checkout procedure to familiarize the customer with the boat and to check the boat's inventory. When the customer brought the boat back to the Marina after the charter, the crew and the charter representative would check it in, spending about 2 hours inspecting and cleaning it. *591 During 1988 the Force 10 was rented 12 times for a total of 23-1/2 days, each charter averaging 2 days. Petitioner visited Dallas 14 times in 1988 on business for his employer, and he made side trips to inspect the Force 10 while there. He also used the Force 10 while on a 2-week vacation in Dallas during the summer of 1988. Petitioner performed various services relating to the boat: Preparing a budget analysis of the boat's activity, negotiating insurance and financing for the boat, arranging for repairs, and performing on-site inspections. He allegedly spent 8 hours each month performing budget accounting, and 8 hours for each of the 14 trips to Dallas for on-site inspections. Petitioner did not maintain any contemporaneous records reflecting the time spent and the dates that these services were performed. He testified, however, that he spent over 600 hours on the activity, a figure which includes the time he traveled between Dallas and Connecticut, and between Dallas and the boat. He also stated that he spent "something over 300 hours" without counting the Dallas/Connecticut travel time. On a Schedule C relating to the Force 10 attached to the 1988 Federal *592 income tax return, petitioners showed income and deductions in the following amounts: Gross Income
$  2,352 Deductions:
Insurance
(950)
Interest
(4,596)
Repairs
(1,922)
Management fee
(1,411)
(8,879)
Net profit or (loss)
(6,527)
Upon audit, respondent increased the amount of petitioners' gross income and reduced the amount of the deductions relating to the Force 10 activity, resulting in a net loss of $ 4,516. [3] Further, respondent disallowed a deduction for the corrected loss on the ground that the so-called passive activity loss provisions of section 469 applied. Section 469(a) provides, in relevant part, that a passive activity loss shall not be allowed in the case of a taxpayer who is an individual. A passive activity is defined to mean a trade or business in which the taxpayer does not materially participate. Sec. 469(c)(1). Generally, a passive activity includes any rental activity, *593 sec. 469(c)(2); the regulations, however, exclude a rental activity involving the use of tangible property if "The average period of customer use for such property is seven days or less", sec. 1.469-1T(e)(3)(ii)(A), Temporary Income Tax Regs., 53 Fed. Reg. 5702 (Feb. 25, 1988). For purposes of this case, therefore, we are served the question of whether petitioner materially participated in the Force 10 charter activity. "A taxpayer shall be treated as materially participating in an activity only if the taxpayer is involved in the operations of the activity on a basis which is -- (A) regular, (B) continuous, and (C) substantial." Sec. 469(h)(1). The participation of a spouse shall be taken into account. Sec. 469(h)(5). In implementing section 469, Congress specifically authorized the Secretary of the Treasury to prescribe regulations as to "what constitutes an activity, material participation, or active participation". Sec. 469(l)(1). The regulations, section 1.469-5T(a), Temporary Income Tax Regs., 53 Fed. Reg. 5725-5726 (Feb. 25, 1988), contain seven so-called safe harbor areas where individual participation will be *594 considered material. With respect to this case, petitioner relies on section 1.469-5T(a)(7), Temporary Income Tax Regs., 53 Fed. Reg. 5725 (Feb. 25, 1988), which provides: Based on all of the facts and circumstances (taking into account the rules in paragraph (b) of this section), the individual participates in the activity on a regular, continuous, and substantial basis during such year.
Generally, any work done by a taxpayer in connection with an activity in which the taxpayer has an interest shall be treated as participation in that activity. Sec. 1.469-5T(f)(1), Temporary Income Tax Regs., 53 Fed. Reg. 5726 (Feb. 25, 1988). In dealing with the "safe harbor" contained in section 1.469-5T(a)(7), Temporary Income Tax Regs., supra, the regulations, however, distinguish, inter alia, between management participation, sec. 1.469-5T(b)(2)(ii), Temporary Income Tax Regs., 53 Fed. Reg. 5726 (Feb. 25, 1988), [4] investor participation, sec. 1.469-5T(f)(2)(ii), Temporary Income Tax Regs., 53 Fed. Reg. 5727 (Feb. 25, 1988), and other participation. With respect to management *595 participation or activities, section 1.469-5T(b)(2)(ii), Temporary Income Tax Regs., supra, provides: An individual's services performed in the management of an activity shall not be taken into account * * * under paragraph (a)(7) of this section unless, for such taxable year -- (A) No person (other than such individual) who performs services in connection with the management of the activity receives compensation described in section 911(d)(2)(A) in consideration for such services; and (B) No individual performs services in connection with the management of the activity that exceed (by hours) the amount of such services performed by such individual.
*596 Section 911(d)(2)(A) includes in its definition of earned income "wages, salaries, or professional fees, and other amounts received as compensation for personal services actually rendered". Furthermore, work done in the taxpayer's capacity as an investor in the activity is not treated as participation in the activity unless he or she is directly involved in the day-to-day operations. Sec. 1.469-5T(f) (2)(ii)(A), Temporary Income Tax Regs., 53 Fed. Reg. 5727 (Feb. 25, 1988); see Toups v. Commissioner, T.C. Memo. 1993-359. Work as an investor includes study and review of financial statements, preparing summaries or analyses of finances or operations, and monitoring the finances or operations in a nonmanagerial capacity. Sec. 1.469-5T(f)(2)(ii)(B), Temporary Income Tax Regs., 53 Fed. Reg. 5727 (Feb. 25, 1988). If an individual's participation during a taxable year is 100 hours or less, he or she is not treated as "materially participating" under the "safe harbor" of paragraph (a)(7). Sec. 1.469-5T(b)(2)(iii), Temporary Income Tax Regs., 53 Fed. Reg. 5726 (Feb. 25, *597 1988). A taxpayer can establish his or her participation by any reasonable means. While contemporaneous daily time reports are not required, reasonable means "may include but are not limited to the identification of services performed over a period of time and the approximate number of hours spent performing such services during such period, based on appointment books, calendars, or narrative summaries." Sec. 1.469-5T(f)(4), Temporary Income Tax Regs., 53 Fed. Reg. 5727 (Feb. 25, 1988). In applying these principles to the facts in this case it is important to keep in mind that the income-producing activity involved is the chartering of the boat. Petitioner contends that he materially participated in the management of the activity under the "facts and circumstances" test of the temporary regulations. He claims that he participated on a regular, continuous, and substantial basis for more than 100 hours in taxable year 1988, that no one else performed more management services than he did, and that no one received section 911(d)(2)(A) compensation for management services. We disagree. First, while the regulations are somewhat ambivalent concerning the *598 records to be maintained, they by no means allow the type of post-event ballpark guesstimate that petitioner used. As a matter of proof, therefore, he has failed to establish that he materially participated in the rental activity. See Rule 142(a). Second, from what we can determine, all of the activity that directly related to the actual rental of the boat was performed by the Marina and not by petitioner. Its personnel prepared the boat for charter, performed the "checkout", and cleaned the boat after. We note in this regard that petitioners' Schedule C reflects that petitioner made payment to the Marina for a "management fee". Such payment is described in section 911(d)(2)(A). The record indicates that the Marina performed all services continuously throughout the year. As the Marina performed more management services than petitioner, petitioner's so-called management activity does not constitute participation. Sec. 1.469-5T(b)(2)(ii), Temporary Income Tax Regs, 53 Fed. Reg. 5726 (Feb. 25, 1988). Furthermore, even if petitioner expended the hours that he claims, from what we can determine, a large part of these activities would not be considered *599 participation under section 1.469-5T(f)(2)(ii), Temporary Income Tax Regs., 53 Fed Reg. 5727 (Feb. 25, 1988), because the activities were done in the capacity of an investor. Participation as an investor does not constitute participation for purposes of section 469. [5]Sec. 1.469-5T(f)(2)(ii)(A), Temporary Income Tax Regs, 53 Fed. Reg. 5727 (Feb. 25, 1988). Accordingly we find that the $ 6,527 loss reported on petitioners' 1988 Federal income tax return is a loss from a passive activity, and they may not use it to reduce their taxable income from nonpassive *600 sources for that year. To reflect the concessions by the parties, Decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Petitioners concede that they had unreported interest income in the amount of $ 389; that a deduction for interest claimed on Schedule A was overstated by $ 7,080; and that the passive loss with respect to "Anadyne Equity I" is limited to $ 7,981. Respondent conceded the addition to tax under sec. 6653(a)(1)(A) in the amount of $ 299.↩
3. Petitioners agree that the amount of the net loss determined by respondent is accurate.↩
4. The legislative history of sec. 469↩ indicates that management participation should be more closely scrutinized than other types of participation. "Participation in management cannot be relied upon unduly both because its genuineness and substantiality are difficult to verify, and because a general management role, absent more, may fall short of the level of involvement that the material participation standard in the provision is meant to require." S. Rept. 99-313 (1986), 1986-3 C.B. (Vol. 3) 713, 734-735.
5. We reject petitioner's claim that we should consider his travel time while on the business of his employer and his travel time between Dallas and Lake Texoma as participation in the Force 10 activity. See Toups v. Commissioner, T.C. Memo. 1993-359↩. The most that can be said about this time is that it was spent on an investment-related activity rather than the charter business.