T.C. Memo. 1999-249

UNITED STATES TAX COURT

STEVEN D. RAPP AND JUDITH A. RAPP, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 18039-97.                    Filed July 28, 1999.

<u>Scott M. Nelson</u> and <u>Robert B. Patterson</u>, for petitioners.

<u>Blaine C. Holiday</u>, for respondent.

MEMORANDUM OPINION

DINAN, <u>Special Trial Judge</u>:   This case was heard pursuant
to the provisions of section 7443A(b)(3) and Rules 180, 181, and
182.[1]

---

[1]    Unless otherwise indicated, all section references are
to the Internal Revenue Code in effect for the taxable years in
(continued...)

Respondent determined deficiencies in petitioners' Federal income taxes for 1991, 1992, and 1993 in the amounts of $2,548, $2,772, and $2,774, respectively.

The issue for decision is whether petitioners' claimed Schedule C losses for 1991, 1992, and 1993 constitute passive activity losses under section 469. The resolution of this issue turns on whether petitioners materially participated in the activity of renting their condominium unit during the taxable years in issue.

Some of the facts have been stipulated and are so found. The stipulations of fact and attached exhibits are incorporated herein by this reference. Petitioners resided in Roseville, Minnesota, on the date the petition was filed in this case.

Petitioner husband works as a manager of a commercial unit for Norwest Banks. His formal education includes a bachelor's degree from the University of Minnesota and a master's degree from Mankato University.

In 1988, petitioners purchased condominium unit number 6 (the unit) at Bluefin Bay, a condominium complex located in Tofte, Minnesota. Tofte is located on the shore of Lake Superior in Superior National Forest, approximately 225 miles northeast of petitioners' residence.

---

[1](...continued)
issue. All Rule references are to the Tax Court Rules of Practice and Procedure.

Bluefin Bay consists of six buildings, each having a different layout. The six buildings contain a total of 54 condominium units. Petitioners' unit is a three-bedroom unit.

As unit owners, petitioners were members of the Bluefin Bay Condominium Association (BBCA), the common interest owner of Bluefin Bay. Petitioner husband was one of BBCA's officers, at one time serving as its president. BBCA owns all of Bluefin Bay's common property, including an indoor swimming pool, tennis courts, a conference room, a parking area, water and waste treatment facilities, and communication and cable equipment. BBCA arranged for the Tofte Management Company (TMC) to manage and operate the Bluefin Bay complex. BBCA's members, the unit owners, entered into individual management contracts with TMC. The terms of the management contracts were the result of the joint effort of numerous BBCA members, including petitioner husband.

Petitioners' management contract with TMC was effective January 1, 1991, through the taxable years in issue. Under the management contract, TMC was appointed as the exclusive rental agent for petitioners' unit. Petitioners were required to specifically reserve their unit in writing for the days which they intended to personally use it. In the event petitioners failed to properly notify TMC of their intended use, rental arrangements previously made by TMC with other guests would hold

priority over petitioners' personal use, unless the guests could be assigned to another, comparable unit.

The management contract provided for TMC to receive 45 percent of the gross rental proceeds from petitioners' unit in exchange for its services. Under the management contract, TMC's duties included, but were not limited to, managing reservations, checking in and out guests, providing housekeeping services, collecting rents, generating financial reports, conducting damage inspections, and making any necessary maintenance calls and repairs.

TMC owns and operates a restaurant located adjacent to the condominium complex. During the taxable years in issue, TMC's employees staffed a reception desk near the restaurant entrance for guests staying at Bluefin Bay. TMC also employed managers, activity directors, bookkeepers, a housekeeping staff, and a maintenance staff, all of whom participated in the activity of renting petitioners' unit.

TMC's employees developed, drafted, and printed marketing and promotional materials for Bluefin Bay. TMC maintained a toll-free telephone number for promotional and reservation purposes. TMC's employees answered this telephone line, booked reservations for owners and guests, and mailed promotional and marketing materials to interested parties.

TMC's employees checked in guests, received deposits, and issued keys. They responded to maintenance calls and made any necessary repairs. TMC's employees opened, closed, and cleaned the pool, hot tub, and pool house on a daily basis. They also maintained Bluefin Bay's tennis courts and exercise room. In the winters, TMC's employees plowed the parking lots and shoveled, salted, and sanded the walkways.

TMC's employees collected payments from guests and checked them out of the unit. They cleaned and inspected the unit after guests departed. The cleaning activity included cleaning the interior of the unit and laundering the linens and towels.

TMC's employees maintained daily books and records reflecting the collected rents and fees owed by petitioners. They issued monthly and annual reports to petitioners reflecting the rental activity, owner charges, and TMC's share of the gross rentals.

Petitioners' duties under the management contract included providing TMC with a schedule of their intended personal use, maintaining adequate insurance on their unit, and complying with certain "Interior Quality Standards".

TMC made detailed inspections of petitioners' unit at least annually and compiled lists of mandatory repairs and items which needed to be replaced in order to satisfy the Interior Quality Standards. Petitioners were given the choice to personally make

these repairs and improvements or to authorize TMC to make them. If they failed to comply by certain dates, TMC would arrange for the work to be performed by its employees or subcontractors and charge petitioners accordingly.

Petitioners traveled to Bluefin Bay 4 to 6 times during each of the taxable years in issue. In most cases, petitioners would stay at Bluefin Bay in their unit for a long weekend. They also spent one full week each year in their unit. Petitioners' trips to Bluefin Bay usually combined family vacations with owner activities such as attending board meetings and/or making some repairs to their unit. Petitioner husband also participated in BBCA meetings at locations close to petitioners' residence during the taxable years in issue.

On Schedules C attached to their 1991, 1992, and 1993 returns, petitioners reported the following amounts with respect to the rental of their unit:

|                | 1991 | 1992 | 1993 |
|----------------|------|------|------|
| Gross Income   | $32,380.34 | $31,281.31 | $37,174.23 |
| Total Expenses | (41,463.72) | (40,864.03) | (43,834.35) |
| Net Loss       | ( 9,083.38) | ( 9,582.72) | ( 6,660.12) |

Petitioners claimed business loss deductions on their 1991, 1992, and 1993 returns in amounts equal to the amounts of their net losses reported on the Schedules C. In the statutory notice of deficiency, respondent disallowed the claimed business loss deductions on the ground that the claimed losses were sustained

in connection with a passive activity in which petitioners did not materially participate.

Section 469 generally disallows for the taxable year any passive activity loss that exceeds passive activity income. See sec. 469(a), (d)(1). A passive activity is any activity which involves the conduct of any trade or business in which the taxpayer does not materially participate.[2] See sec. 469(c)(1).

In general, section 469(h)(1) provides that a taxpayer shall be treated as materially participating in an activity only if the taxpayer is involved in the operations of the activity on a basis which is regular, continuous, and substantial. Section 469(l) authorizes the Secretary to prescribe regulations as may be necessary or appropriate to carry out the provisions of section 469, including regulations which specify what constitutes material participation. Sec. 469(l)(1).

Section 1.469-5T(a), Temporary Income Tax Regs., 53 Fed. Reg. 5725-5726 (Feb. 25, 1988), provides that an individual will

---

[2]     The term "passive activity" also includes any "rental activity", regardless of whether the taxpayer materially participates in the activity. Sec. 469(c)(2), (4). A rental activity is any activity where payments are principally for the use of tangible property. See sec. 469(j)(8). However, petitioners' activity does not constitute a rental activity within the meaning of sec. 469(j)(8) because the average customer stay at their unit was less than 7 days. See sec. 1.469-1T(e)(3)(ii)(A), Temporary Income Tax Regs., 53 Fed. Reg. 5702 (Feb. 25, 1988).

be treated as materially participating in an activity for the taxable year if and only if:

(1) The individual participates in the activity for more than 500 hours during such year;

(2) The individual's participation in the activity for the taxable year constitutes substantially all of the participation in such activity of all individuals (including individuals who are not owners of interests in the activity) for such year;

(3) The individual participates in the activity for more than 100 hours during the taxable year, and such individual's participation in the activity for the taxable year is not less than the participation in the activity of any other individual (including individuals who are not owners of interests in the activity) for such year;

(4) The activity is a significant participation activity * * * for the taxable year, and the individual's aggregate participation in all significant participation activities during such year exceeds 500 hours;

(5) The individual materially participated in the activity * * * for any five taxable years (whether or not consecutive) during the ten taxable years that immediately precede the taxable year;

(6) The activity is a personal service activity * * * and the individual materially participated in the activity for any three taxable years (whether or not consecutive) preceding the taxable year; or

(7) Based on all of the facts and circumstances * * * the individual participates in the activity on a regular, continuous, and substantial basis during such year.

These regulations provide for taxpayers to be treated as materially participating in an activity if they satisfy one of the seven enumerated tests. Petitioners argue that they satisfy the requirements of section 1.469-5T(a)(3), Temporary Income Tax

Regs., 53 Fed. Reg. 5726 (Feb. 25, 1988). Respondent argues that petitioners have not satisfied this material participation test.

We must initially decide whether petitioners participated in the rental of their unit for more than 100 hours during each of the taxable years in issue. Section 1.469-5(f)(1), Income Tax Regs., generally provides that any work done by an individual in connection with an activity in which the individual owns an interest at the time the work is done shall be treated as participation of the individual in the activity. We consider petitioners' combined hours of participation in deciding whether this material participation test is satisfied. See sec. 469(h)(5); sec. 1.469-5T(f)(3), Temporary Income Tax Regs., 53 Fed. Reg. 5727 (Feb. 25, 1988).

With respect to the evidence which may be used to establish hours of participation, section 1.469-5T(f)(4), Temporary Income Tax Regs., 53 Fed. Reg. 5727 (Feb. 25, 1988), provides:

> (4) Methods of proof. The extent of an individual's participation in an activity may be established by any reasonable means. Contemporaneous daily time reports, logs, or similar documents are not required if the extent of such participation may be established by other reasonable means. Reasonable means for purposes of this paragraph may include but are not limited to the identification of services performed over a period of time and the approximate number of hours spent performing such services during such period, based on appointment books, calendars, or narrative summaries.

Petitioners submitted copies of their monthly calendars from 1991, 1992, and 1993, two documents which purport to summarize

their hours of participation in the activity of renting their unit, and petitioner husband's testimony. Neither of the summary documents was prepared contemporaneously. Petitioner husband testified that the detailed summary document (joint exhibit 6-F) was prepared in 1994. The other summary document was prepared at some time after 1994 in preparation for this case and we do not rely upon it. We also have serious doubts about the accuracy of the detailed summary document. The monthly calendars corroborate little more than the dates of petitioners' trips to Bluefin Bay and petitioner husband's local BBCA meetings. Petitioner husband's testimony establishes that he spent some hours working out the details of the individual management contracts and serving as BBCA's president. However, his testimony with respect to petitioners' participation in renting the unit and performing repairs to the unit was unpersuasive. The maintenance records show that petitioners filled out work orders for TMC's employees to perform such simple repairs as replacing light bulbs. In addition, Dennis Rysdahl, who oversees the management and operation of Bluefin Bay and did so during the taxable years in issue, testified that petitioner wife's participation in making repairs and improvements to the unit was greater than petitioner husband's. Mr. Rysdahl testified that petitioner wife was involved in decorating the unit, but the maintenance records show that petitioners left the actual work of decorating their unit to

TMC or its subcontractors.  Petitioner wife's involvement appears to have been limited to making decisions concerning how the unit should be decorated.  Petitioner wife did not testify about her alleged hours of participation.

After carefully reviewing the record, we find that petitioners have not proved that they participated in the activity of renting their unit for more than 100 hours during any of the taxable years in issue.  We therefore need not decide whether petitioners satisfy the section 1.469-5T(a)(3), Temporary Income Tax Regs., 53 Fed. Reg. 5726 (Feb. 25, 1988), second requirement of participating in the activity of renting their unit more than any other individual.  See <u>Serenbetz v. Commissioner</u>, T.C. Memo. 1996-510.

We conclude that petitioners did not materially participate in the activity of renting their unit during 1991, 1992, and 1993.  Accordingly, we hold that petitioners' claimed losses from such activity constitute passive activity losses which are not deductible in the taxable years in issue by reason of section 469.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.