Andrew M. D'AVANZO, and Linda J. D'Avanzo, Plaintiffs,

v.

**The UNITED STATES, Defendant.**

No. 00–776T.

United States Court of Federal Claims.

July 26, 2005.

Andrew M. D'Avanzo, pro se for plaintiffs Andrew and Linda D'Avanzo.

Elizabeth D. Seward, Trial Attorney, Eileen J. O'Connor, Assistant Attorney General, United States Department of Justice, Washington, D.C. for defendant. Mildred Seidman, David Gustafson, United States Department of Justice, Washington, D.C. of counsel.

## OPINION AND ORDER

GEORGE W. MILLER, Judge.

Andrew M. and Linda J. D'Avanzo are plaintiffs in this tax refund case that is before the Court after trial held on August 13 and November 5, 2004. United States Court of Federal Claims Rule ("RCFC") 52(a) governs "actions tried upon the facts," and provides that findings of fact may be "based on oral or documentary evidence ... and due regard shall be given to the opportunity of the trial court to judge of [sic] the credibility of the witness." RCFC 52(a). The Court heard testimony from plaintiff[1] Andrew D'Avanzo and received affidavits from Sylvia Ware, the real estate agent for plaintiffs' Boca Raton property; Tom Campbell, Mr. D'Avanzo's former supervisor at Kurzweil

Applied Intelligence ("Kurzweil"); and Theodore McNeff, a former tenant of the South Avenue property. For the reasons set forth below, the Court directs the entry of judgment for plaintiffs in the amount of $8,304.84 plus interest as provided by law.

## BACKGROUND

Plaintiffs filed a complaint on December 26, 2000, seeking a refund of taxes for 1994 of $9,185.84. In its First Amended Answer, filed May 24, 2004, defendant "admits that plaintiffs are entitled to claim certain deductions and to recover the resulting overpayment of $8,304.84." Am. Ans. ¶ 1. Specifically, defendant admitted that "plaintiffs are entitled to Schedule E, line 26, real estate losses of $25,000 (rather than the $32,258.31 claimed), a charitable deduction of $15 (rather than the $2,415 claimed), and Schedule A, line 23, 'Miscellaneous Deductions' of $8,123.56 (rather than the $10,045.76 claimed)." Id. at n. *. The Court of Federal Claims has jurisdiction over this tax refund case pursuant to the Tucker Act, 28 U.S.C. § 1491(a) (2000). Hinck v. United States, 64 Fed.Cl. 71, 74–76 (2005).

During the course of discovery, plaintiffs found a receipt for $2,442 in real estate taxes purportedly paid in 1994 on a parcel of unimproved property, which had not been reported on Schedule A. Plaintiffs also claimed that on their 1994 tax return they reported as gross income dividends of $220.71 paid by an insurance company, which dividends plaintiffs now contend are nontaxable as a partial return of premiums paid. Plaintiffs did not present these arguments to the Internal Revenue Service in their claim for refund, i.e., their 1994 income tax return, Form 1040, filed October 15, 1998. Accordingly, for the reasons set forth in defendant's July 12, 2004 filing, the Court ruled that it lacked jurisdiction over these newly-articulated claims. See Order, filed July 13, 2004.

The issues remaining for trial were the following:

---

1. As used herein and unless otherwise noted, the term "plaintiff" in the singular shall refer to plaintiff Andrew D'Avanzo. Andrew and Linda D'Avanzo are husband and wife and filed a joint return for 1994, the year in issue. Linda D'Avanzo was employed by the public school system of Canton, Massachusetts, during 1994. She has authorized Andrew D'Avanzo to represent her in this suit. See Def. Ex. D–1, D–23 at 2.

1. Did Andrew D'Avanzo satisfy the requirements to qualify as a real estate professional as set forth in § 469(c)(7)[2] and the material participation requirement of § 469(c)(1)(B) such that plaintiffs were entitled to deduct unlimited Schedule E rental losses[3]?

If the Court resolved that issue in favor of plaintiffs, then the following subsidiary questions remained to be resolved:

A. Did certain replacements or improvements relating to two of the rental properties constitute capital assets the cost of which was required to be recovered through depreciation deductions, or were the costs of the replacements or improvements fully deductible in 1994 when they were incurred and the items placed in service?

B. Did plaintiffs satisfy the substantiation requirements of § 274 with respect to $943.40 in automobile and local travel expenses claimed on Schedule E?

2. Were $1,922.20 of plaintiffs' rental real estate expenses properly deducted as miscellaneous itemized deductions on Schedule A, line 22, rather than on Schedule E?

3. Were plaintiffs entitled to deduct on Schedule A unsubstantiated cash donations to a church allegedly totaling $2,400?

## DISCUSSION

**I. Plaintiffs Were Not Entitled to Deduct Unlimited Real Estate Losses on Schedule E Because Mr. D'Avanzo Failed To Satisfy the Requirements To Qualify as a Real Estate Professional**

**A. Real Estate Professional**

■ Section 469(a) generally disallows any passive activity loss for a taxable year. A "passive activity loss" is defined as the excess of the aggregate losses from all passive activities for the taxable year over the aggregate income from all passive activities for that year. § 469(d)(1). A passive activity is any trade or business in which the taxpayer does not materially participate. § 469(c)(1). Rental activity is treated as a per se passive activity without regard to whether the taxpayer materially participates. § 469(c)(2), (4).

Under § 469(c)(7)(B), the rental activities of a taxpayer in a real property trade or business (real estate professional) are not per se passive activities under § 469(c)(2), but rather are treated as a trade or business, subject to the material participation requirements of § 469(c)(1). *See* Treas. Reg. § 1.469–9(e)(1). A taxpayer qualifies as a real estate professional under § 469(c)(7)(B) if:

(i) more than one half of the personal services performed in trades or businesses by the taxpayer during such taxable year are performed in real property trades or businesses in which the taxpayer materially participates, and

(ii) such taxpayer performs more than 750 hours of services during the taxable year in real property trades or businesses in which the taxpayer materially participates.

In the case of a joint return, the requirements for qualifying as a real estate professional are satisfied if either spouse separately satisfies them for a given year. § 469(c)(7)(B). Thus, if either spouse qualifies as a real estate professional, his or her rental property activities are not characterized as per se passive activities under § 469(c)(2). But the qualifying spouse's rental activities are still treated as passive activity under § 469(c)(1) unless the taxpayer

---

2. Unless otherwise noted the terms section(s) and the symbols § and §§ refer to the Internal Revenue Code of 1986, 26 U.S.C., as amended and in effect during the relevant period.

3. Defendant conceded that Mr. D'Avanzo satisfied the requirement of "active participation" with respect to the five rental properties in issue, entitling him to passive rental real estate losses of up to $25,000 for 1994 and a carryover of unused losses to subsequent years. Def.'s Mem. of Contention of Fact and Law, filed July 27, 2004, at 2 n. 3. (citing §§ 469(b), 469(I); *Madler v. Comm'r*, 75 T.C.M. (CCH) 2025, T.C.M. (RIA) 98,112, 1998 WL 118075 (1998)).

materially participated in the activity.[4]

Section 469(h)(1) defines material participation as regular, continuous, and substantial involvement in the operations of an activity. In determining whether a taxpayer materially participates in an activity, the participation of his or her spouse is taken into account. § 469(h)(5). Material participation must be satisfied with regard to each separate interest in rental real estate unless the taxpayer has made an election to treat all interests in rental real estate as a single rental activity. § 469(c)(7)(A); *see also* Treas. Reg. § 1.469–9(g). For the year in issue, plaintiffs did not elect to treat their five rental properties[5] as a single rental real estate activity. Transcript of Proceedings, D'Avanzo v. United States, No. 00–776 C (Aug. 13 and Nov. 5, 2004) ("Trial Tr.") at 30. Hence, plaintiff's activities were required to be regular, continuous, and substantial with respect to each property.

### B. Plaintiffs Failed To Satisfy the Substantiation Requirement

In a tax refund suit, the burden of proof, including both the burden of persuasion and the burden of going forward, rests with plaintiff. *See, e.g., Sara Lee Corp. and Subsidiaries v. United States,* 29 Fed.Cl. 330, 334 (1993) (citations omitted). Plaintiffs were required to maintain records sufficient to substantiate the time that Mr. D'Avanzo devoted to rental property activities. § 6001; Treas. Reg. § 1.6001–1(a); *see also Mowafi v. Comm'r,* 81 T.C.M. (CCH) 1605, 2001 WL 497370 (2001). Regarding the evidence that a taxpayer may use to establish hours of participation, § 1.469–5T(f)(4), Temporary Income Tax Regs. provides:

(4) Methods of proof. The extent of an individual's participation in an activity may be established by any reasonable means. Contemporaneous daily time reports, logs, or similar documents are not required if the extent of such participation may be established by other reasonable means. Reasonable means for purposes of this paragraph may include but are not limited to the identification of services performed over a period of time and the approximate number of hours spent performing such services during such period, based on appointment books, calendars, or narrative statements.

While the Tax Court has acknowledged that this temporary regulation is somewhat vague regarding the records that a taxpayer must maintain to prove hours of participation, it uniformly has held that the regulations do not permit a post-event "ballpark guesstimate." *See, e.g., Fowler v. Comm'r,* 84 T.C.M. (CCH) 281, 2002 WL 31005826 (2002); *Carlstedt v. Comm'r,* 74 T.C.M. (CCH) 170, 1997 WL 407788 (1997); *Speer v. Comm'r,* 72 T.C.M. (CCH) 125, 1996 WL 393938 (1996); *Goshorn v. Comm'r,* 66 T.C.M. (CCH) 1499, 1993 WL 500167 (1993).

Plaintiff did not offer a contemporaneous written record of the number of hours he spent performing personal services with respect to the five rental properties in 1994. Based on certain contemporaneous pictures, letters, and receipts, plaintiff, in preparation for trial in 2004, drafted lists of tasks that he purportedly carried out with respect to Bradford Road, South Avenue, Boca Raton, and Brewster Road. He assigned roughly estimated hours to each task and offered the lists at trial, which were received as plaintiffs' demonstrative exhibits 19–A through 19–D. Trial Tr. at 371–72. Mr. D'Avanzo testified at trial that he devoted time to the tasks in question as set forth on the demonstrative exhibits. Plaintiff conceded, however, that he did "not have an appointment book or calendar to offer." Trial Tr. at 38. He explained that he would "identify the activities by walking [the Court] through [the exhibits consisting of receipts, letters, and

---

**4.** "Material participation" is not to be confused with "active participation." As stated in n. 2, defendant has conceded that Mr. D'Avanzo met the requirements of "active participation."

**5.** During 1994, plaintiff, either in his own name or jointly with his wife, owned five residential rental properties at the following addresses: (a) 10 Brewster Road, Wellesley, Mass. ("Brewster Road"); (b) 620 South Ave., Weston, Mass. ("South Ave."); (c) 100 Bradford Road, Weston, Mass. ("Bradford Road"); (d) Unit A–1706, Sea Ranch Club, Boca Raton, Fla. ("Boca Raton"); and (e) 1515 Sea Angler Drive, Lake Havasu City, Arizona ("Arizona"). Def. Ex. D–1 at 9, 11; Trial Tr. 247.

photographs] ... and once we have the activity identified, try to make an assessment, *a guess* ... to get to the hours." Trial Tr. at 41 (emphasis added). Furthermore, plaintiff consistently admitted that his calculations of hours were just approximations or guesses:

> D'Avanzo: "And there is approximately 400 hours roughly, an approximate estimation of my personal time spent on the property."

> \*　　\*　　\*　　\*　　\*　　\*

> Seward: "[Is this] your postevent 2004 ballpark, best guesstimate of the hours that you put in, is that correct?"

> D'Avanzo: "That's correct."

> Seward: "Okay. And again, the same question as with Bradford Road. You don't have any—you don't have a year 1994 journal or any record of—of hours that you spent on any of these projects?"

> D'Avanzo: "No."

Trial Tr. 169.

The Tax Court, when faced with the type of evidence adduced by plaintiffs, has consistently held that taxpayers failed to meet the substantiation requirement in connection with establishing that they are a "real estate professional" in accordance with § 469(c)(7). In *Mowafi*, the taxpayer attempted to meet the burden of proving he was a real estate professional "by relying primarily on his testimony at trial and noncontemporaneous logs which he prepared ... to support the hours of personal time [that] he purportedly devoted to the rental properties." 81 T.C.M. (CCH) 1605. In that case, the taxpayer "prepared these logs 2 to 3 years after the fact admittedly on the basis of speculation and with an end result in mind (*i.e.*, [to prove that he was a real estate professional in accordance with § 469(c)(7)(B) ] )." *Id.* The Tax Court found the logs "untrustworthy and decline[d] to rely blindly upon them to reach petitioner's desired result." *Id.* Mr. D'Avanzo's demonstrative exhibits setting forth the hours devoted to his rental properties were created ten years after the events in question based on speculation regarding events that occurred in 1994. Like the logs in *Mowafi*, plaintiff's demonstrative exhibits are unreliable on that basis. Furthermore, like Mowafi,

plaintiff clearly had an end result in mind when preparing the exhibits for trial, *i.e.*, meeting the hours requirements set forth in § 469(c)(7)(B).

In *Fowler v. Comm'r*, petitioner, in preparation for trial in 2001, attempted to approximate the time he spent performing services in a real estate trade or business by making notations on a calendar based on his recollection of activities that occurred in 1994 and 1995. 84 T.C.M. (CCH) 281. The Tax Court found that "[p]etitioners' estimates ... do not reliably or reasonably reflect the hours that petitioner actually devoted to ... his rental real estate activities." *Id.* The Court also stated that the "handwritten notations that were prepared years later are not reliable." *Id.* The Tax Court held that Fowler's method of approximation was not reasonable within the meaning of § 1.469–5T(f)(4), Temporary Income Tax Regs. In the case at bar, plaintiff's method of approximation is substantially similar to that used in *Fowler*.

The Tax Court similarly held in *Rapp v. Comm'r*, that noncontemporaneous documents even coupled with testimony are insufficient methods of proof under § 1.469–5T(f)(4), Temporary Income Tax Regs. 78 T.C.M. (CCH) 175 (1999). In that case, taxpayers tendered copies of their monthly calendars from 1991, 1992, and 1993, as well as two documents that purported to summarize their hours of participation in the activity of renting their unit. Mr. Rapp also provided testimony regarding hours spent in real estate activities. *Id.* One of the summary documents was prepared in 1994 and the other was prepared some time after 1994 in preparation for that case. The court stated that it "do[es] not rely" on the summary document created after 1994 in preparation for the case. *Id.* Furthermore, the court was concerned about basing the time estimates on the calendars because "[t]he monthly calendars corroborate little more than the dates of [certain activities]." *Id.* Likewise, Mr. D'Avanzo's receipts corroborated only that he purchased certain materials for repair of the rental units. They do not indicate who performed the repairs and how much time

plaintiff personally spent making repairs.[6] Similarly, the pictures and letters tendered by plaintiff demonstrate that there were conditions that needed to be fixed at the rental units, but do not indicate whether plaintiff personally fixed them or hired others to do so. Nor do the pictures or letters establish how many hours were devoted to such activities.

In a case before the Tax Court in which petitioners were attempting to establish that they did *not* materially participate in rental real estate activities pursuant to § 469, the court had before it a contemporaneous calendar and diary of activities. *Carlstedt v. Comm'r*, 74 T.C.M. (CCH) 170. The court stated that the diary of activities did not meet the standard for a narrative summary as contemplated by the temporary regulations because it was simply a numerical compilation of hours that the taxpayer allocated to his activities based on his review of his calendar, which the court found to be unreliable and uncorroborated estimates. *Id.* Additionally, the taxpayer's "document-based method is also unreliable, as the documents themselves do not provide any objective measure of the time for activities extrapolated therefrom. Rather, petitioner assigned times to activities years later based solely on his judgment and experience as to how long the activities must have taken him." *Id.* This is exactly the method used by Mr. D'Avanzo in assessing the time he devoted to rental activities in 1994. Trial Tr. at 40 ("So there is no way I can give you an exact number, but ... some of the activities that I'll be identifying can be reasonably estimated because they're activities that would have the same hours whether they would be done in [19]94 or done in 2004."). In *Carlstedt*, the court further stated that "[e]ven if such uncorroborated estimates were made in good faith, memories can fade with time." *Id.* This Court has no doubt that Mr. D'Avanzo's assessments were made in good faith. However, estimates made ten years after the fact, based only on some receipts, letters, and pictures, none of which recorded time spent on activities, are simply insufficiently reliable

to satisfy the requirements set forth in § 1.469–5T(f)(4), Temporary Income Tax Regs.

In *Speer v. Comm'r*, the taxpayers attempted to comply with the substantiation requirement by relying on Mr. Speer's testimony that, during the tax years at issue, he devoted 550 hours to his real estate rental activities. 72 T.C.M. (CCH) 125 (1996). Mr. Speer did not keep a diary of the amount of time he devoted to his real estate rental activities during the years at issue, nor did the taxpayers submit any records similar to those described in § 1.469–5T(f)(4), Temporary Income Tax Regs. The court found that Mr. Speer's testimony about the various types of activities he engaged in with respect to his real estate holdings and the approximate number of hours he spent on these activities did not constitute a "narrative summary" sufficient to establish material participation. *Id.* Rather, such testimony was simply a post-event "ballpark guesstimate." *Id.* (citing *Goshorn v. Comm'r*, 66 T.C.M. (CCH) 1499).

In *Carlstedt*, the Tax Court addressed the weight to be given to witness testimony regarding a taxpayer's participation in real estate activities for purposes of establishing that the taxpayer was a "real estate professional." 74 T.C.M. (CCH) 170. The court was unpersuaded by the testimony of the taxpayer's witnesses because "there is little evidence in the record to support petitioner's self-serving estimations. None of petitioners' witnesses could attest to the number of hours that petitioner spent working ..., and they only gave vague statements as to the extent of his participation." *Id.*

As in *Carlstedt*, the affidavits submitted by plaintiff provide only vague statements regarding plaintiff's participation in his rental activities. Discussing the South Avenue property, Mr. McNeff stated that plaintiff "spent several afternoons," completed work "over a long period of time," and made "many, many trips." Pl.Ex. 18–3. During the time in which plaintiff contends he was

---

6. Ironically, plaintiff did submit some evidence showing that persons other than plaintiff made repairs to the rental properties. *See, e.g.,* Def.

Ex. D–11 at 2 (installation of windows at the Bradford Road property), D–16 at 2, 4, 5 (various repairs to the Boca Raton property).

working almost 24 hours a day repairing the Boca Raton unit, Sylvia Ware was able to state only that she "visited him a few times and observed him working or interviewing repair people. He appeared to be very busy." Pl.Ex. 18–5. Mr. Campbell's affidavit regarding the number of hours that Mr. D'Avanzo worked for Kurzweil during 1994 is similarly vague. Mr. Campbell stated that plaintiff's hours at Kurzweil were "flexible," and that plaintiff was "an independent businessman with the office facilities available for his own use as needed." Pl.Ex. 18–4. Mr. Campbell recognized that plaintiff "often conducted [his rental business] out of the office as needed." *Id.* Mr. Campbell also stated that plaintiff had a "reduced workload" during 1994. *Id.* None of these statements, however, provide any allocation of hours devoted to Kurzweil or hours devoted to rental activities. The Court is unpersuaded by the vague statements provided in the affidavits. Additionally, like the taxpayer's testimony in *Carlstedt,* plaintiff's testimony at trial was unpersuasive because "there is little evidence in the record to support petitioner's self-serving estimations." 74 T.C.M. (CCH) 170.

At trial, plaintiff roughly estimated the time he spent working on each property as follows: Bradford Road: 997 hours, South Avenue: 400 hours, Boca Raton: 535 hours, Brewster Road: 155 hours. Pl.Ex. 19–A through 19–D; Trial Tr. at 290. His 2004 estimates do not reasonably or reliably reflect the actual number of hours he devoted to real estate activities. Plaintiff testified that in 1994 he spent approximately 2,095 hours [7], *i.e.,* more than 40 hours per week, performing personal services in real property trades or businesses. This is in addition to the time he was allegedly working for Kurzweil as a computer salesman. While plaintiff claims that he had a reduced workload at Kurzweil in 1994, the evidence shows that he was paid as a full time employee until he was laid off on June 27, 1994. *See* Def. Ex. D–1 at 1; Trial Tr. at 132–33, 344.

7. This estimate is derived from the total time spent on the four properties discussed above plus a one-day trip to the Arizona property.

There are no contemporaneous records that show how much time plaintiff spent working for Kurzweil during the first half of 1994, nor showing how much time plaintiff devoted to his rental activities during the year at issue. Furthermore, plaintiff's testimony and the testimony of Mr. Campbell on this issue were vague regarding exactly how many hours were devoted to Kurzweil work versus real estate rental activities. *See Carlstedt,* 74 T.C.M. (CCH) 170. The affidavits of Ms. Ware and Mr. McNeff were similarly vague regarding the time plaintiff devoted to his rental real estate activities. The record is devoid of information that would support plaintiff's contentions. Rather than being the type of proof contemplated by § 1.469–5T(f)(4), Temporary Income Tax Regs., plaintiff's testimony based on his receipts, photographs, and letters constituted post-event ballpark guesstimates of the sort that have been held to be insufficient in the cases cited earlier in Part I.B.

### C. Plaintiffs Are Not Protected by the Regulation Allowing For Reconstruction of Lost Records

Plaintiff asserted that in the first part of 1994 he kept a spiral-bound notebook in which he kept track of his daily phone calls and wrote notes to himself pertaining to his real estate activities. The notebook was essentially his "daily bible." Trial Tr. at 31. The notebook, which was stored at plaintiff's Kurzweil office, contained both Kurzweil information and information related to plaintiff's real estate activities. *Id.* Pursuant to an investigation of Kurzweil, on June 27, 1994, the U.S. Attorney for the District of Massachusetts seized the notebook. *Id.* at 32–33. Despite being assured that he would have an opportunity to gain access to his notebook, Mr. D'Avanzo was unable to locate the notebook once it had been taken by the U.S. Attorney. *Id.* Mr. D'Avanzo did not start a new notebook for the remainder of 1994, nor did he attempt to recreate the information in the notebook for the first half of 1994.[8]

8. Mr. D'Avanzo did keep some notes from his trip to Boca Raton when he was working on that property. Pls. Ex. F–B 60–80. Those notes, however, contain only phone numbers, estimates

Plaintiffs rely on Treas. Reg. § 1.274–5T, which provides that "where the taxpayer establishes that the failure to produce adequate records is due to the loss of such records through circumstances beyond the taxpayer's control, such as destruction by fire, flood, earthquake, or other casualty, the taxpayer shall have a right to substantiate a deduction by reasonable reconstruction of his expenditures or use." Treas. Reg. § 1.274–5T. This provision appears to relate to substantiation requirements regarding travel expenses, entertainment, or gifts and not real estate professionals. § 274; Treas. Reg. § 1.274–5A. Assuming however, that this provision does apply to substantiation regarding qualification as a "real estate professional" under § 469(c)(7), the phrase "beyond the taxpayer's control" contemplates a natural disaster, and not the situation here. *See Gizzi v. Comm'r*, 65 T.C. 342, 1975 WL 3007 (1975) (records lost while moving do not sufficiently resemble floods or fire to be considered a casualty).

Furthermore, even if the loss was a casualty, plaintiffs failed to fulfill the additional requirement of reasonably reconstructing their records. *Id.* (citing *Lewis M. Bryan,* 43 P–H Memo. T.C. par. 74,266 (1974) (records lost while moving; no effort at reconstruction); *Seckel v. Comm'r*, 33 T.C.M. 734 (1974) (records were burglarized; no effort at reconstruction); *Blackburn v. Comm'r*, 32 T.C.M. 1194 (1973) (records lost in flood; no effort at reconstruction)). Importantly, plaintiff lost his records *during* the tax year in question and made no effort to reconstruct them at that time or start a new notebook that would have covered the second half of 1994. Instead, plaintiff sought to reconstruct his records ten years later in anticipation of trial. Thus, even if applicable, plaintiff has failed to meet the requirements of Treas. Reg. § 1.274–5T.

Because plaintiff cannot substantiate his hours, he has failed to satisfy either requirement of § 469(c)(7)(B) and was not a real estate professional for the 1994 tax year. Thus, the Court need not address whether

plaintiff met the material participation requirements set forth in § 469(c)(1). Nor does the Court reach the issues of repairs versus improvements or substantiation of local automobile and travel expenses.

## II. Plaintiffs Should Have Claimed $1,922.20 of Rental Real Estate Expenses on Schedule E Rather Than Schedule A

On their 1994 Form 1040, Schedule A–Itemized Deductions, line 22, plaintiffs reported "investment expenses" of $3,490.34. Def. Ex. D–1 at 5, line 22. Of that total, $1,922.20 were various expenses incurred in connection with plaintiff's rental real estate activities. Def. Ex. D–2 at 1, 2, 5 (line 22 items). Miscellaneous rental expenses were claimed in the following categories:

A. Administrative: $255.85. This grouping included postage and express mail costs, lease forms, office supplies, such as typewriter ribbons and an answering machine, copies, file folders, checks, and photographs. Def. Ex. D–2 at 1, line 22, item A.

B. Rental property bank fees: $35. *Id.,* item C.

C. Rental property advertising: $461.40. *Id.* at 2, item D.

D. Travel for rental activities: $64.85. *Id.,* item E.

E. Rental property supplies: $591.03. *Id.,* item F; *id.* at 5, item 3.

F. Rental property toll calls: $514.07. *Id.* at 4, item J.

Rental property expenses are to be deducted on Schedule E, Supplemental Income and Loss, Part 1. The instructions to Schedule E, Part 1, state in relevant part: "Use Part 1 to report income and expenses from rentals of real estate . . . ." Def. Ex. D–26 at 1. Rental real estate expenses specifically identified on Schedule E as deductible include, among others, advertising, auto and travel, supplies, and utilities. Def. Ex. D–1 at 9. These are the same categories of rental expenses that plaintiff deducted erroneously

for work to be performed, and other miscellaneous notes. They do not contain any information regarding hours spent on activities. *See Carl-*

*stedt,* 74 T.C.M. (CCH) 170 (holding that such a book or diary of activities was not a "narrative statement").

on Schedule A. Thus, the rental real estate expenses that plaintiff claimed as investment expenses on Schedule A may be claimed only on Schedule E, Part 1.

By contrast, miscellaneous expenses deductible on Schedule A, line 22 included "the total amount you paid to produce or collect taxable income and manage or protect property held for earning income. But **do not** include any expenses deducted elsewhere such as on Schedule C, C–EZ, E or F." *See* 1994 Form 1040 and Instructions, Def. Ex. D–25 at 2; *see also* Def. Ex. D–31 at 4–5. Examples given of miscellaneous expenses that may be deducted on Schedule A, line 22 include, among others, (a) safe deposit box rental, (b) certain legal and accounting fees, (c) clerical help and office rent, (d) custodial (*i.e.,* trust account) fees, and (e) certain expenses related to an activity not engaged in for profit. Def. Ex. D–25 at 2. The claimed rental expenses do not come within any of the categories of allowable miscellaneous deductions. They were therefore not deductible on Schedule A.

### III. Plaintiffs May Not Deduct Unsubstantiated Cash Donations Allegedly Totaling $2,400

On Schedule A, plaintiffs reported a deduction of $2,400 for cash donations allegedly made to a church. Section 170(a) allows a deduction for charitable contributions paid during the taxable year to the extent verified as required by Treasury Regulations. The regulations require that the taxpayer maintain for each contribution a canceled check, a receipt from the donee organization showing the name of the donee and the date and amount of the contribution, or other reliable written records showing the name of the donee and the date and amount of the contribution. Treas. Reg. § 1.170A–13(a); *Aldea v. Comm'r,* 79 T.C.M. (CCH) 1917, 2000 WL 371549 (2000). Plaintiffs conceded prior to trial, however, that they "can not substantiate $2400 church donations." Pls.' Mot. For a Court Ruling to Help Facilitate a Possible Settlement Without Trial, filed June 29, 2004. At trial, plaintiff again "conceded the fact that [he] cannot produce a document that verified that [he] gave this money to the Catholic Church." Trial Tr. at 357–58. He also explained that he "was under the misimpression ... that cash donations under $250 did not require a receipt ...." *Id.* Accordingly, the Court finds in favor of defendant on this issue.

### *CONCLUSION*

For the reasons set forth above, Mr. D'Avanzo failed to satisfy the requirements of § 469(c)(7) to qualify as a real estate professional and thus plaintiffs were not entitled to deduct unlimited rental real estate losses on Schedule E. Rather, such losses were limited to $25,000. Plaintiffs were not entitled to deduct $1,922.20 of rental real estate expenses on Schedule A. Instead, those expenses were required to be deducted on Schedule E and were subject to the $25,000 limitation, which plaintiffs exceeded. Finally, plaintiffs were not entitled to deduct $2,400 as a charitable contribution. As noted above, defendant has conceded that, with these adjustments, plaintiffs are entitled to a refund of $8,304.84, rather than the $9,185.84 they claimed on their 1994 income tax return. Accordingly, the Court directs the entry of judgment for plaintiffs in the amount of $8,304.84 plus interest as provided by law.

IT IS SO ORDERED.