T.C. Summary Opinion 2011-43

UNITED STATES TAX COURT

JOSE B. MAGNO AND SUSAN A. O'CONNELL, Petitioners $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4600-10S.                     Filed April 6, 2011.

John E. Ellsworth, for petitioners.

Brett A. Saltzman, for respondent.

LARO, Judge:  This case was heard pursuant to the provisions
of section 7463 of the Internal Revenue Code in effect when the
petition was filed.[1]  Pursuant to section 7463(b), the decision

---

[1]Subsequent section references are to the applicable
versions of the Internal Revenue Code, and Rule references are to
the Tax Court Rules of Practice and Procedure.  Some dollar
amounts are rounded.

to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined deficiencies in petitioners' Federal income taxes of $23,847, $36,684, and $30,145, and accuracy-related penalties of $4,769, $7,337, and $6,029, for 2005, 2006, and 2007 (subject years), respectively. After concessions,[2] we must decide whether: (1) Losses related to rental properties owned by petitioners and claimed on their Federal income tax returns for the subject years are subject to the passive activity limitations of section 469; and (2) petitioners are liable for section 6662(a) accuracy-related penalties for the subject years. We hold for respondent as to both issues.

<u>Background</u>

Some of the facts have been stipulated and are so found. The stipulated facts and the exhibits submitted therewith are incorporated by this reference.

---

[2]In addition to the concessions explicitly agreed to by the parties, we consider petitioners to have conceded respondent's determination that for 2006 they may not deduct $17,141 of mortgage interest claimed on Schedule E, Supplemental Income and Loss, by virtue of the fact that petitioners did not address that issue at trial or on brief. We hold without further comment that petitioners may not deduct $17,141 of Schedule E mortgage interest for 2006 because they have failed to introduce any evidence with respect to the payment of that interest. See <u>Vanicek v. Commissioner</u>, 85 T.C. 731, 742-743 (1985); <u>Masloff v. Commissioner</u>, T.C. Memo. 1998-257; see also <u>Mendes v. Commissioner</u>, 121 T.C. 308, 316 (2003).

Petitioners Jose B. Magno (Mr. Magno) and Susan A. O'Connell (Ms. O'Connell) resided in Illinois when their petition was filed. During the subject years Mr. Magno worked as a financial planner. From 1998 until July 2003 petitioners lived in Michigan (first residence).

In early 2003 petitioners began constructing a second house in Michigan (second residence) and thereafter tried multiple times to sell the first residence but without success. When their sales efforts failed, petitioners often rented that property. Tenants occupied the first residence without interruption from July 2003 until the lease expired in August 2005. Petitioners tried to sell the first residence from August 2005 until March 2006. During that time Mr. Magno performed general maintenance on the property, prepared it for sale, and marketed it to prospective buyers. Despite Mr. Magno's efforts, however, the first residence did not sell, and petitioners again rented that property.

In March 2006 petitioners leased the first residence to tenants who broke the lease after 2 months. Petitioners commenced an action against those tenants for breach of contract, and Mr. Magno assisted the prosecution of that case. The lawsuit settled, and petitioners again sought to sell the first residence without success. Petitioners instead chose to lease the property from November 2006 until November 2007. In connection with that

rental, Mr. Magno prepared the lease, verified the tenant's employment, and showed the property.

In 2006 Ms. O'Connell was offered a job promotion which would require petitioners to move from Michigan to Illinois. Ms. O'Connell accepted the promotion, and petitioners tried to sell or lease the second residence. Petitioners secured tenants, and they leased the second residence from October 2006 through the end of 2007. During that time Mr. Magno performed maintenance on the second residence, which required him to travel 370 miles from Illinois to Michigan. These trips typically required Mr. Magno to spend 2 days in Michigan, during which time he stayed with family or at a hotel. Mr. Magno paid for these hotel stays with cash or a credit card.

During each of these trips, Mr. Magno repaired or supervised the repair of the second residence. The tasks which Mr. Magno or his contractors performed included, among others, fixing a tub, installing a sump pump, fixing an icemaker, removing a bone from a garbage disposal, replacing heads on a sprinkler system, winterizing that sprinkler system, and removing lint from a clothes dryer and vent. When the repairs required Mr. Magno to purchase parts, he paid with cash or a credit card and received receipts. When he was unable to complete the repairs himself,

Mr. Magno hired repairmen to do so, though he could not recall the names of the individuals he hired.[3]

Petitioners timely filed their Federal income tax return for each of the subject years and reported on Schedules E total rental real estate losses of $30,117, $57,275, and $86,321, respectively.  On each of those returns petitioners reported Mr. Magno's occupation as a provider of financial planning services. Petitioners also reported on Schedules C, Profit or Loss From Business, that Mr. Magno operated a financial services or planning business during the subject years.  Respondent issued to petitioners a notice of deficiency dated November 20, 2009, disallowing the Schedule E losses because respondent had determined that section 469 prohibited recognition of the losses. Petitioners petitioned the Court, and on September 27, 2010, a trial was held in Chicago, Illinois.

Discussion

I.  Burden of Proof

The Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving that those determinations are incorrect.  Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Under section 7491(a), the burden of proof as to factual matters may shift to

---

[3]Mr. Magno also modified mortgages on the first and second residences in 2007.

the Commissioner in certain circumstances.  Petitioners have not alleged that section 7491(a) applies, nor have they established their compliance with the substantiation and recordkeeping requirements of the Internal Revenue Code.  See sec. 7491(a)(2)(A) and (B).  Accordingly, petitioners bear the burden of proof.

## II.  Real Estate Activities

Petitioners argue mainly that Mr. Magno is a qualifying real estate professional because he meets the requirements of section 469(c)(7)(B) and that the rental portions of his real estate activities are not passive because he materially participated in those activities.[4]  Respondent argues that Mr. Magno's rental real estate activities are per se passive and that petitioners may not deduct losses associated with those activities because Mr. Magno is not a qualifying real estate professional.[5]  We agree with respondent.

A taxpayer is generally allowed a deduction for all the ordinary and necessary expenses paid or incurred in connection with a trade or business or for the production of income.  See

---

[4]Petitioners do not contend that they are entitled to the offset under sec. 469(i), nor are they.

[5]Respondent does not argue in the main that the claimed rental expenses should be disallowed on the grounds that the first and second residences were not converted from personal use property to property held for the production of income.  See, e.g., Saunders v. Commissioner, T.C. Memo. 2002-143, affd. 75 Fed. Appx. 494 (6th Cir. 2003).

secs. 162, 212. Section 469(a)(1), however, limits the deductibility of losses from these activities where those losses arise from passive activities. A passive activity is any activity which involves the conduct of any trade or business in which the taxpayer does not materially participate. Sec. 469(c)(1). The disallowed passive activity loss equals the excess of the aggregate losses from all passive activities for a taxable year over the aggregate income from all passive activities for that year. Sec. 469(d)(1); sec. 1.469-2T(b)(1), Temporary Income Tax Regs., 53 Fed. Reg. 5711 (Feb. 25, 1988).

Rental real estate activity is generally treated as a per se passive activity regardless of whether the taxpayer materially participates. Sec. 469(c)(2), (4). However, a taxpayer may avoid having his or her real estate activity classified as a per se passive activity if the taxpayer is a qualifying real estate professional. A taxpayer may qualify as a real estate professional if:

> (i) More than one-half of the personal services performed in trades or businesses by the taxpayer during such taxable year are performed in real property trades or businesses in which the taxpayer materially participates, and

> (ii) such taxpayer performs more than 750 hours of service during the taxable year in real property trades or businesses in which the taxpayer materially participates.

Sec. 469(c)(7)(B). Where, as here, a joint return has been made, the foregoing requirements are satisfied if either spouse

separately satisfies those requirements.  Id.  Thus, if Mr. Magno meets the foregoing requirements, petitioners' rental activities are not per se passive and the normal passive activity loss rules of section 469(c)(1) will apply.  We consider in turn petitioners' ability to meet each of the requirements under section 469(c)(7)(B).

A.   Other Personal Services Mr. Magno Performed

Petitioners argue that the hours Mr. Magno spent on his rental real estate activities accounted for more than one-half of the total hours of personal services he performed in trades or businesses during the subject years.  See sec. 469(c)(7)(B)(i).  We are not persuaded.  Petitioners did not elect to treat their interests in the first and second residences as a single rental activity, and they must therefore prove that Mr. Magno meets the requirements of section 469(c)(7)(B) as to each property.  See sec. 469(c)(7)(A); sec. 1.469-9(g), Income Tax Regs.

During the audit stage of this proceeding, Mr. Magno told respondent's revenue agent that he worked approximately 25 to 30 hours per week on his financial planning and services business.  That conversation was documented in the revenue agent's notes, and the revenue agent testified credibly to its contents at trial.  At trial, however, Mr. Magno testified that he worked principally as a financial consultant from January through August 2005.  He also testified that he became a full-time manager of

the first and second residences in 2006 and 2007 and that he reduced the number of hours which he devoted to his financial consulting services business to "about" 500 hours per year.

We credit the testimony of respondent's revenue agent and therefore conclude that Mr. Magno must have worked more than 1,250 hours during each subject year in real property trades or businesses to qualify as a real estate professional under section 469(c)(7)(B)(i).[6]  Mr. Magno was not able to corroborate with written documentation his assertions that more than one-half of the personal services he performed in trades or businesses during the subject years were performed in real property trades or businesses.  Accordingly, we find that Mr. Magno has not proven that he meets the requirements of section 469(c)(7)(B)(i).

B.    750-Hour Requirement

Assuming arguendo that we were persuaded by petitioners' claim that more than one-half of Mr. Magno's personal services performed in trades or businesses during the subject years were performed in real property trades or businesses, petitioners are still unable to satisfy the 750-hour requirement of section 469(c)(7)(B)(ii).  Petitioners argue that Mr. Magno spent more than 750 hours on each of petitioners' rental real estate activities during each of the subject years.  The extent of Mr.

---

[6]The product of 25 hours per week for 50 weeks per year is 1,250 hours.

Magno's participation in petitioners' real estate activities may be proven by "any reasonable means." See sec. 1.469-5T(f)(4), Temporary Income Tax Regs., 53 Fed. Reg. 5727 (Feb. 25, 1988). Reasonable means include the identification of services performed over a period of time and the approximate number of hours spent performing those services, based on appointment books, calendars, or narrative summaries. Id. It is well settled that although the phrase "any reasonable means" is broad, a taxpayer may not use a postevent "ballpark guesstimate" of the time committed to the rental activity. See Hill v. Commissioner, T.C. Memo. 2010-200; Lee v. Commissioner, T.C. Memo. 2006-193; Goshorn v. Commissioner, T.C. Memo. 1993-578; cf. D'Avanzo v. United States, 67 Fed. Cl. 39, 42 (2005) (adopting same standard).

Petitioners rely solely on the testimony of Mr. Magno to prove that they devoted the requisite number of hours to qualify their rental activities under section 469(c)(7)(B)(ii). In so doing, they present no calendars, narrative summaries, mileage logs, receipts, or any other records which would support Mr. Magno's testimony, even though by Mr. Magno's own admission they possessed such items. The failure of petitioners to introduce such evidence creates a presumption that such information was not favorable to them. See Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947). But here we are concerned with more than just the

lack of corroborating evidence.  In certain material respects, we found the testimony of Mr. Magno to be vague and unpersuasive. See Mowafi v. Commissioner, T.C. Memo. 2001-111.

For example, Mr. Magno testified that between August 2005 and March 2006 he devoted 250 hours to repairing or supervising the repair of the first residence.  That testimony does not allow us to determine how much time Mr. Magno personally spent making such repairs or whether such activity was material under section 469.  See D'Avanzo v. Commissioner, supra at 44-45; cf. Trask v. Commissioner, T.C. Memo. 2010-78 (crediting a taxpayer for time spent to repair or supervise the repair of rental properties where the taxpayer maintained detailed work logs which identified the properties repaired and the contractors used).  We are also troubled by the fact that Mr. Magno is unable to recall basic details about those repairs such as the dates they were performed or the names of third parties whom he hired.

We also find Mr. Magno's estimates of the time he devoted to petitioners' rental activities to be excessive in relation to the tasks performed.  See Hill v. Commissioner, supra.  Mr. Magno testified that he spent between 8 and 10 hours per day for 2 or 3 days to complete such seemingly simple tasks as removing a bone from a garbage disposal, removing lint from a clothes dryer and a dryer vent, and winterizing a sprinkler system.  We do not credit Mr. Magno's assertion that he would drive approximately 740 miles

over the course of 16 or 20 hours to perform such simple and routine tasks. See <u>Rapp v. Commissioner</u>, T.C. Memo. 1999-249. Such is especially so given that Mr. Magno did not offer any records to substantiate these trips or the expenses incurred during them.[7]

Given the lack of corroborating evidence, we simply cannot accept as fact that Mr. Magno worked the requisite number of hours to qualify as a real estate professional for each of his rental real estate activities. See <u>Scheiner v. Commissioner</u>, T.C. Memo. 1996-554. We find that Mr. Magno's method for proving the time he devoted to his rental activities is not reasonable under section 1.469-5T(f)(4), Temporary Income Tax Regs., <u>supra</u>. Cf. <u>Trask v. Commissioner</u>, <u>supra</u> (relying on a taxpayer's testimony as proof that he spent more than 750 hours to resolve over 80 issues for 11 pieces of property during a 1-year period).

C.    <u>Conclusion</u>

We hold that Mr. Magno is not a qualifying real estate professional under section 469(c)(7)(B) and that petitioners' rental real estate activities are treated as per se passive under section 469(c)(2).[8] See <u>Fowler v. Commissioner</u>, T.C. Memo. 2002-

---

[7]Mr. Magno testified that the record included copies of gas receipts, but we find no such receipts in the record.

[8]Given that holding, we need not consider whether Mr. Magno materially participated in petitioners' rental real estate activities.

223.  It follows that the losses petitioners sustained in connection with their real estate activities may not be used to reduce their nonpassive income.  See sec. 469(a).

III. <u>Accuracy-Related Penalties</u>

Respondent determined that petitioners are liable for accuracy-related penalties under section 6662(a) for the subject years.  Section 6662(a) and (b)(1) imposes an accuracy-related penalty equal to 20 percent of any portion of an underpayment of tax required to be shown on the return that is attributable to negligence or disregard of rules or regulations.

The term "negligence" includes any failure to make a reasonable attempt to comply with the provisions of the internal revenue laws and any failure to keep adequate books and records or to substantiate items properly.  Sec. 6662(c); see also sec. 1.6662-3(b)(1), Income Tax Regs.  Negligence may also be defined as lack of due care or the failure to do what a reasonable and ordinarily prudent person would do under similar circumstances. <u>Neely v. Commissioner</u>, 85 T.C. 934, 947 (1985).

Respondent bears the burden of production with respect to petitioners' liability for the accuracy-related penalties included in the notice of deficiency and must therefore produce evidence that it is appropriate to impose those penalties.  See sec. 7491(c); see also <u>Higbee v. Commissioner</u>, 116 T.C. 438, 446 (2001).  Once respondent has met his burden of production,

petitioners must then adduce proof sufficient to persuade the Court that they were not negligent and that they did not act carelessly, recklessly, or with an intentional disregard of rules or regulations. Higbee v. Commissioner, supra at 446-447; see also sec. 6662(c). Alternatively, petitioners may avoid liability for the accuracy-related penalties by showing that there was reasonable cause for the underpayment and that they acted in good faith. See sec. 6664(c)(1).

We find that respondent has met his burden of production because petitioners offered no documentation to support their claim that they performed the requisite number of hours to be engaged in a real property trade or business. See Smith v. Commissioner, T.C. Memo. 1998-33. Petitioners did not address their liability for the accuracy-related penalties at trial or on brief, and on the basis of the record at hand, we find that petitioners were negligent. They maintained no books and made no apparent effort to substantiate the hours which Mr. Magno purportedly spent on petitioners' real estate activities. See Stewart v. Commissioner, T.C. Memo. 2010-184. We believe that an ordinarily reasonable and prudent person with Mr. Magno's expertise in financial planning would have sought the advice of a tax expert before claiming more than $173,000 in losses over a 3-year period. Petitioners made no such effort and in failing to do so were negligent. Cf. Fowler v. Commissioner, supra (finding

a taxpayer who relied on the advice of an accountant not liable for an accuracy-related penalty even though the taxpayer did not meet the requirements of section 469(c)(7)(B)).

Nor does reasonable cause exist to excuse petitioners from the accuracy-related penalties. We recognize that section 469 and the regulations thereunder cover a highly complex area of the Internal Revenue Code, but complexity alone does not excuse a taxpayer from taking reasonable steps to determine the law and comply with it. Niedringhaus v. Commissioner, 99 T.C. 202, 222 (1992); see also sec. 1.6664-4(b)(1), Income Tax Regs. Petitioners made no apparent effort to comply with the tax law or to seek out the advice of someone who could help them do so. We therefore hold petitioners liable for accuracy-related penalties for the subject years.

We have considered all arguments made by the parties, and to the extent that we have not specifically addressed them, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

Decision will be entered for respondent.