T.C. Memo. 2020-84

UNITED STATES TAX COURT

RANDY G. SELLERS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5742-18.                          Filed June 15, 2020.

<u>D. Loren Washburn</u>, for petitioner.

<u>Randall Craig Schneider</u> and <u>Rebekah A. Myers</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

BUCH, <u>Judge</u>:  For the years at issue, Mr. Sellers filed individual returns
and returns on behalf of his businesses.  On his individual returns and on the
returns of one of his corporations, Mr. Sellers deducted nonpassive losses
attributed to two passthrough entities:  King's Dominion Investments, LLC (King's
Dominion), and SS Marine, LLC.

**[\*2]**   The Commissioner issued a notice of deficiency recharacterizing these losses as passive and disallowing many of Mr. Seller's deductions, including a self-employed health insurance expense deduction.  The Commissioner also determined accuracy-related penalties under section 6662(a).[1]  After concessions, the issues that remain are whether Mr. Sellers and his corporation had sufficient bases in the passthrough entities to deduct their reported losses, whether Mr. Sellers materially participated in SS Marine, and whether he may deduct his self-employed health insurance expenses.

Mr. Sellers' losses were passive because he did not establish that he materially participated in SS Marine.  He also failed to substantiate his or his corporation's bases in his passthrough entities.  Additionally, Mr. Sellers failed to substantiate his expenses for the self-employed health insurance deduction.

### FINDINGS OF FACT

Randy Sellers is a certified public accountant who contracts with Professional Business Advisors (PBA), an accounting firm in Salt Lake City, Utah. Mr. Sellers has an office at PBA where he performs accounting and consulting work.  He also owns multiple businesses.

---

[1]All section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

[*3] I.     Mr. Sellers' Businesses

During 2013 and 2014, Mr. Sellers owned multiple businesses.

A.     Deep Creek

During 2013 and 2014, Mr. Sellers was the sole shareholder and president of Deep Creek Management, Inc. (Deep Creek), an S corporation operating out of Utah.  Mr. Sellers was Deep Creek's only employee; Deep Creek contracted with PBA for Mr. Sellers' accounting and consulting services.  Mr. Sellers also prepared Deep Creek's income tax returns.

B.     King's Dominion

In 2013 and 2014, Mr. Sellers (83%) and Deep Creek (17%) owned King's Dominion, a Utah limited liability company (LLC) treated as a partnership for tax purposes.  King's Dominion had no employees and was in the business of recovering "defunct real estate loans and semi-tractor trailer loans."  Mr. Sellers prepared the tax returns for King's Dominion.

C.     Mandy Investments

Mr. Sellers and his wife, Mary Sellers, owned Mandy Investments, LLC. The Sellerses created Mandy Investments to hold family investments.

**[*4]** D.    <u>SS Marine</u>

In 2013 and 2014, Mr. Sellers (1%) and Deep Creek (99%) owned SS Marine, a Utah LLC treated as a partnership for tax purposes.  SS Marine sold boats and boat parts and performed boat maintenance and upkeep for marine enthusiasts in the Salt Lake City area.  In 2013 and 2014, SS Marine had storefronts in North Salt Lake and Orem, Utah.

Though SS Marine hired employees to run most of the day-to-day operations, both Mr. and Mrs. Sellers contributed time to the business.  Mr. Sellers performed many of the back-end operations of SS Marine.  He managed the bank accounts, credit lines, and cash reconciliation, and he prepared the company's tax returns.  Mr. Sellers also received phone calls from the stores' managers, reviewed larger vendor orders, and approved boat trade-ins.  Mrs. Sellers contributed by processing payroll for SS Marine employees.  She also obtained boat titles from the Department of Motor Vehicles (DMV) and helped plan the company's annual Christmas party.

As owners of a boat retailer, the Sellerses participated in various boat-related events.  In 2013 and 2014, SS Marine had a booth at a local boat show.  The Sellerses were involved in hauling boats to and from the boat show and appearing at the boat show as representatives of SS Marine.  Mr. Sellers, and occasionally

[*5] Mrs. Sellers, would also attend boat conferences. Boat conferences allowed out-of-town boat manufacturers to market their products to dealers by providing manufacturing plant tours, test drives, and access to vendor representatives. Conferences often lasted two or three days and required the Sellerses and their employees to travel out of State.

## II.   Mr. Sellers' 2013 and 2014 Returns

Mr. Sellers prepared and filed returns on behalf of Deep Creek, King's Dominion, and himself. Deep Creek filed a Form 1120S, U.S. Income Tax Return for an S Corporation, and an amended Form 1120S for 2013. On the amended Form 1120S, Deep Creek reported gross receipts of $1,065,902 and ordinary business income of $384,001. Mr. Sellers calculated this income by deducting $303,039 of nonpassive, passthrough losses along with other deductions.

King's Dominion also reported a $6,911 loss on its 2013 Form 1065, U.S. Return of Partnership Income.

On his 2013 Form 1040, U.S. Individual Income Tax Return, Mr. Sellers reported nonpassive losses attributed to SS Marine of $2,961. He also claimed a $15,652 self-employed health insurance expense deduction.

For 2014, Deep Creek and Mr. Sellers again reported nonpassive losses attributed to SS Marine and King's Dominion. Deep Creek reported a $380,378

[*6] nonpassive loss from SS Marine and a $97,100 nonpassive loss from King's Dominion for a total nonpassive loss of $477,478. Mr. Sellers reported a $3,842 loss from SS Marine.

III.  Procedural History

The Commissioner sent Mr. Sellers a notice of deficiency for 2013 and 2014 disallowing his 2013 self-employed health insurance expense deduction and recharacterizing losses from SS Marine and King's Dominion as passive losses. Finally, the Commissioner determined accuracy-related penalties under section 6662(a).

On June 23, 2017, the supervisor of the revenue agent assigned to Mr. Sellers' case signed a Civil Penalty Approval Form approving accuracy-related penalties for Mr. Sellers' 2013 and 2014 Forms 1040. On July 11, 2017, the Commissioner sent an IRS Letter 950, also referred to as a "30-day letter," to Mr. Sellers informing him of the section 6662(a) accuracy-related penalties.

While residing in Utah, Mr. Sellers timely filed a petition with this Court alleging that his losses were nonpassive and that he properly claimed the self-employment health insurance expense deduction for 2013. He also disputed the section 6662(a) penalties for 2013 and 2014.

**[\*7]**   The parties stipulated documents that Mr. Sellers argues substantiate his and Deep Creek's bases in King's Dominion and SS Marine.  These documents include various bank account statements for SS Marine.  The documents also include an unexecuted contract for an inventory line of credit issued by GE Commercial Distribution Finance Corp. and an accompanying guaranty, both dated January 6, 2010.  The guaranty lists Deep Creek as a guarantor of the line of credit and is signed by Mr. Sellers in his capacity as president of Deep Creek, but it is not signed on behalf of the purported lender.

The record includes other unexecuted documents.  One such document is a promissory note dated June 1, 2005, between King's Dominion and Mandy Investments, the company created to hold the Sellers' family investments.  The promissory note names King's Dominion as the borrower and Mr. Sellers and Deep Creek as the loan's guarantors.  Mr. Sellers is the representative for Mandy Investments, King's Dominion, and Deep Creek; however, he signed the note on behalf of only King's Dominion, Deep Creek, and himself and not on behalf of Mandy Investments.  Another such document is a business loan agreement also dated June 1, 2005.  Like the promissory note, the business loan agreement was signed by Mr. Sellers on behalf of King's Dominion, Deep Creek, and himself but not for Mandy Investments.

**[\*8]**  The record also includes partial calendars for 2013 and 2014 to substantiate time Mr. Sellers spent actively engaged in SS Marine.

At trial, Mr. Sellers testified to having sufficient bases in King's Dominion and SS Marine to deduct the losses but provided no documents other than those already discussed.

### OPINION

After trial, the remaining issues for this Court to decide are whether Mr. Sellers can substantiate the following:  Deep Creek's basis in King's Dominion; Mr. Seller's and Deep Creek's bases in SS Marine; Mr. Seller's material participation in SS Marine; and Mr. Seller's entitlement to his self-employed health insurance expense deduction.  If Mr. Sellers and Deep Creek lacked sufficient bases in the partnerships, their deducted losses are disallowed.[2]  If Mr. Sellers materially participated in SS Marine, losses up to the amount of basis would not be subject to the passive loss limitations under section 469.

I.    Burden of Proof and Jurisdiction

We have jurisdiction to review and redetermine the Commissioner's determinations in a notice of deficiency when a taxpayer timely files a petition

---

[2]See sec. 704(d).

[*9] challenging those determinations.[3]  Mr. Sellers timely filed a petition challenging the Commissioner's determinations in the notice of deficiency, granting us jurisdiction.[4]

Generally, the Commissioner's determinations in the notice of deficiency are presumed correct, and the taxpayer bears the burden to prove otherwise.[5] However, the Commissioner bears the burden of proof for "any new matter, increases in deficiency, and affirmative defenses."[6]  When the Commissioner presents a new theory to sustain the deficiency, it is "treated as a new matter when it either alters the original deficiency or requires the presentation of different

---

[3]Sec. 6213(a).

[4]During the years remaining in issue, Deep Creek was an S corporation and owned interests in both King's Dominion and SS Marine.  Both King's Dominion and SS Marine were subject to the unified audit and litigation procedures of secs. 6221-6234, enacted as part of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. No. 97-248, 96 Stat. 324.  The issues before us, however, do not require adjustments to partnership items of King's Dominion or SS Marine, and as a result, the TEFRA provisions are not implicated.  It is well established that whether a partner's involvement in an entity was active or passive is a partner-level determination.  See Estate of Quick v. Commissioner, 110 T.C. 172, 187 (1998), supplemented by 110 T.C. 440 (1998).  And, while contributions to partnerships are partnership items, see sec. 301.6231(a)(3)-1(a)(4)(i), Proced. & Admin. Regs., the contributions at issue are from years before Deep Creek elected to be treated as an S corporation.  There is no indication that either King's Dominion or SS Marine was subject to TEFRA at the time of any of the contributions or guaranties at issue.

[5]Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

[6]Rule 142(a)(1).

**[\*10]** evidence. \* \* \* A new theory which merely clarifies or develops the original determination is not a new matter" for which the Commissioner bears the burden of proof.[7]

The Commissioner bears the burden of proof on the issue of whether Mr. Sellers can substantiate his and Deep Creek's bases in his companies. The Commissioner did not raise the issue of sufficient basis for SS Marine until his pretrial memo and waited until trial to address Mr. Sellers' and Deep Creek's bases in King's Dominion. Because the passive loss issue was set forth in the notice of deficiency, Mr. Sellers bears the burden of proof on that issue.

## II. Bases of Partnerships and Allowed Losses

A partner may not deduct partnership losses in excess of the partner's adjusted basis in the partnership.[8] And losses attributed to a partner cannot reduce that partner's basis below zero.[9]

A partner's basis in a partnership fluctuates because of various events. A partner's outside basis is increased in part by the partner's distributive share of

---

[7]Wayne Bolt & Nut Co. v. Commissioner, 93 T.C. 500, 507 (1989).

[8]Sec. 704(d).

[9]Sec. 705(a)(2).

[*11] income and the partner's contributions to the partnership.[10]  Any increase in a partner's share of liabilities or assumption of partnership liabilities also increases the partner's outside basis.[11]  A partner's basis is decreased by the partner's distributive share of partnership losses, nondeductible expenses, and distributions.[12]

The Commissioner contends that Mr. Sellers cannot show a sufficient basis in King's Dominion or SS Marine to deduct the losses.  Because the Commissioner raised this matter after issuing the notice of deficiency, he bears the burden of showing Mr. Sellers and Deep Creek cannot substantiate sufficient bases.

To establish his basis in King's Dominion, Mr. Sellers submitted a promissory note and the business loan agreement.  The agreement states that Mandy Investments lent over $2 million to King's Dominion with Mr. Sellers and Deep Creek as guarantors.  Neither contract is fully executed even though Mr. Sellers is the only person who may sign for all four parties.  Even if the loan were fully executed, King's Dominion would have incurred the liability on June 1, 2005,

---

[10]Secs. 705(a)(1), 722.

[11]Sec. 752(a).

[12]Sec. 705(a)(2).

[*12] 7-1/2 years before 2013. We have no evidence that this loan was outstanding in 2013 and 2014.

Not only do the loan documents significantly predate the years at issue, but they are incomplete records of the partners' bases in King's Dominion. Bases fluctuate in part because of contributions, distributions, losses, and income. Mr. Sellers had access to current financial records for King's Dominion but chose not to provide them to the Court. We thus lack the evidence that would allow us to evaluate the partners' bases in King's Dominion. By demonstrating that Mr. Sellers had access to but did not provide necessary records, the Commissioner met his burden of proof to show that Mr. Sellers did not establish his or Deep Creek's basis in King's Dominion.

When he bears the burden of proof on a matter of substantiation, the Commissioner will fail to meet that burden if the taxpayer provides additional information regarding substantiation records.[13] Mr. Sellers did not provide necessary records to substantiate the partners' bases in King's Dominion. It is well established that we may draw an adverse inference from a party's failure to introduce evidence available to the party.[14] Because Mr. Sellers did not provide

---

[13]Storey v. Commissioner, T.C. Memo. 2012-115.

[14]Abramson v. Commissioner, T.C. Memo. 1987-276, 1987 Tax Ct. Memo
(continued...)

[*13] evidence to demonstrate his basis in King's Dominion, we will infer he cannot do so. The Commissioner thus met his burden of proof to show that Mr. Sellers did not substantiate his or Deep Creek's basis in King's Dominion.

The Commissioner also proved that Mr. Sellers could not establish his basis in SS Marine. To show Deep Creek's basis in SS Marine, Mr. Sellers provided a guaranty on a line of credit financed by GE Commercial Distribution Finance Corp. dated January 6, 2010. The guaranty shows Deep Creek as the guarantor and is signed only by Mr. Sellers on behalf of Deep Creek and not GE Distribution Finance Corp. Mr. Sellers claimed that an identical guaranty exists that shows himself as a guarantor, but he did not provide this guaranty to the Court.

The Deep Creek guaranty paints an incomplete picture. The agreement is dated three years before the first tax year at issue and provides no meaningful insight into the partners' bases in 2013 and 2014.

Other documentation provided by Mr. Sellers fails to establish the partners' outside bases. SS Marine's bank account records from 2011 do not shed light on SS Marine's bases in 2013 and 2014. The bank account record from January 2014 showing a deposit of $50,000 from Deep Creek might indicate a contribution, but

---

[14](...continued)
LEXIS 276, at *32 (citing Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), aff'd, 162 F.2d 513 (10th Cir. 1947)).

**[*14]** again, the information is incomplete.  And testimony did not adequately fill those gaps.  On questioning from the Commissioner's counsel, Mr. Sellers admitted to possessing capital account, financial, and business records for SS Marine; Mr. Sellers did not provide those records to the Court.  Because Mr. Sellers did not provide those records, we infer that he cannot prove his basis in SS Marine.  Accordingly, we hold that Mr. Sellers did not substantiate his basis or Deep Creek's basis in SS Marine.

III.  Material Participation

The Commissioner contends that Mr. Sellers has passive losses from SS Marine because he did not materially participate in the business.  Section 469(a) limits the passive losses available to an individual taxpayer.  A passive loss is the aggregate losses from the taxpayer's passive activities that exceed the aggregate income from those activities.[15]  Section 469 generally prohibits deducting passive losses from unrelated income and allows them to offset only other passive income.  Disallowed passive losses do not disappear; they are suspended and may be used to offset passive income in a later year.[16]

---

[15]Sec. 469(d)(1).

[16]Sec. 469(b).

**[*15]** A passive activity is a trade or business in which the taxpayer does not materially participate.[17] A taxpayer materially participates in an activity when he or she is involved on a regular, continuous, and substantial basis.[18] When determining material participation, the activity of a spouse is taken into account.[19] The regulations identify safe harbors that satisfy material participation, including a safe harbor in which the taxpayer participates in the activity for more than 500 hours during the year.[20]

A taxpayer may establish participation "by any reasonable means."[21] "Reasonable means * * * may include but are not limited to the identification of services performed over a period of time and the approximate number of hours spent performing such services during such period, based on appointment books, calendars, or narrative summaries."[22] Although "reasonable means" may be

---

[17]Sec. 469(c)(1).

[18]Sec. 469(h)(1).

[19]Sec. 469(h)(5).

[20]Sec. 1.469-5T(a), Temporary Income Tax Regs., 53 Fed. Reg. 5725-5726 (Feb. 25, 1988).

[21]Sec. 1.469-5T(f)(4), Temporary Income Tax Regs., 53 Fed. Reg. 5727 (Feb. 25, 1988).

[22]Sec. 1.469-5T(f)(4), Temporary Income Tax Regs., supra (emphasis added).

**[*16]** interpreted broadly, "a post-event ballpark guesstimate" will not suffice.[23]

Furthermore, the Court is not "bound to accept the unverified, undocumented

testimony of taxpayers."[24]

Mr. Sellers argues that his narrative summary suffices to establish his

participation in SS Marine. The Court has rarely relied on trial testimony alone to

verify a taxpayer's material participation. A taxpayer's testimony regarding his

activities and the approximate hours he engaged in those activities is a "postevent

'ballpark guesstimate'" and does not meet the taxpayer's burden of proof for

material participation.[25]

When a taxpayer does not provide evidence to support his or her testimony,

we struggle to find material participation. In Williams v. Commissioner, the

taxpayer attempted to prove material participation for his airplane activity, but did

not provide the Court an activity log, maintenance records, maintenance invoices

or contracts, or flight logs.[26] The taxpayer also testified to dinner meetings to

---

[23]Goshorn v. Commissioner, T.C. Memo. 1993-578, 66 T.C.M. (CCH) 1499, 1501 (1993).

[24]Bartlett v. Commissioner, T.C. Memo. 2013-182, at *9.

[25]Speer v. Commissioner, T.C. Memo. 1996-323, 72 T.C.M. (CCH) 125, 135 (1996) (quoting Goshorn v. Commissioner, 66 T.C.M. (CCH) at 1501).

[26]Williams v. Commissioner, T.C. Memo. 2014-158, at *10-*12, aff'd, 771
(continued...)

**[*17]** market his plane, but "did not provide any contemporaneous records to corroborate these dinner meetings."[27] We concluded that he had "not corroborated" that he had spent sufficient hours on his airplane activity.[28]

However, if a taxpayer provides supporting documentation, a narrative summary may show material participation. In Tolin v. Commissioner, the taxpayer sought to deduct losses from his horse breeding business.[29] During trial, the taxpayer supported his narrative summary with "telephone records, credit card invoices, and other contemporaneous materials."[30] The Court found the taxpayer's narrative summary to be "an accurate depiction of his thoroughbred activity" because it was corroborated by "a significant amount of credible third-party witness testimony and objective evidence."[31] The parties had also stipulated the taxpayer's performance of certain activities before trial.[32]

---

[26](...continued)
F. App'x 365 (9th Cir. 2019).

[27]Williams v. Commissioner, at *12.

[28]Williams v. Commissioner, at *25.

[29]Tolin v. Commissioner, T.C. Memo. 2014-65.

[30]Tolin v. Commissioner, at *28.

[31]Tolin v. Commissioner, at *29.

[32]Tolin v. Commissioner, at *29.

[*18] Credible testimony from multiple witnesses can also strengthen a taxpayer's testimony. In Lamas v. Commissioner, the taxpayer called 10 witnesses who credibly testified about the taxpayer's significant work for his businesses.[33] Even three out of the four witnesses called by the Commissioner's counsel supported the taxpayer's position.[34] The Court found the one contradictory witness to be not credible because of his "inconsistent statements and personal conflicts" with the taxpayer.[35] The taxpayer also produced phone records that corroborated testimony regarding his working hours.[36]

In this case, testimony at trial was insufficient to show that Mr. or Mrs. Sellers materially participated in SS Marine. The testimony was inconsistent, and Mr. Sellers did not provide corroborating documents. The inconsistency and lack of corroborating evidence calls into question the credibility of the Sellerses' testimony.

Witness testimony at trial was conflicting. Witnesses disagreed on whether the North Salt Lake store closed in 2014 or 2017 and where boat conferences were

---

[33]Lamas v. Commissioner, T.C. Memo. 2015-59, at *19.

[34]Lamas v. Commissioner, at *23-*24.

[35]Lamas v. Commissioner, at *33.

[36]Lamas v. Commissioner, at *33.

**[*19]** held.  Witnesses did not agree on how many boats SS Marine sold each year, how often vendor orders occurred, and the frequency of boat trade-ins. Furthermore, witnesses often gave vague testimony and either guessed how much time they spent on each activity or provided no timeframe at all.  These deficiencies in testimony could have been resolved through the introduction of contemporaneous records, which were under the control of Mr. Sellers.

But Mr. Sellers offered little documentary evidence to corroborate testimony.  Mr. Sellers claimed he spent 39 hours in 2013 on the phone but produced no phone records.  He claimed that he spent 236 hours in 2013 on inventory, but did not provide any inventory records.  Many of the activities the Sellerses testified to performing (inventory, DMV titling, bank account review, vendor orders, trade-in review, boat demos, and hauling boats post-boat show) depended on how many boats SS Marine sold each year, but Mr. Sellers did not provide any sales invoices or other records for either year at issue.  And, as previously noted, witnesses could not agree on how many boats were sold.

Mr. Sellers did provide the Court partial calendars for 2013 and 2014.  His assistant created the calendars to help Mr. Sellers stay "on task" with his accounting clients.  That assistant calendared only SS Marine items that took Mr. Sellers out of the accounting office on weekdays, such as the conferences and boat

[*20] shows. These calendars "corroborate little more than the dates" of Mr. Seller's trips and do not establish how many hours Mr. Sellers spent performing the calendared activities, which is insufficient.[37] Additionally, the hours allocated to certain activities were determined before the activities occurred and were not adjusted later to reflect the actual hours devoted to the activities, which makes the information far less meaningful.[38]

A large portion of the Sellerses' claimed hours stems from boat conferences. However, Mr. Sellers submitted no credit card records, plane tickets, hotel reservations, brochures from the conferences, correspondence with conference holders, or schedule of events to demonstrate a timeframe for these conferences. Testimony from witnesses differed on how much time they spent at each conference along with travel time and destination.

In sum, Mr. Sellers failed to establish that he worked enough hours to be considered to have materially participated in SS Marine.

---

[37]See Rapp v. Commissioner, T.C. Memo. 1999-249, 78 T.C.M. (CCH) 175, 177 (1999).

[38]See Fowler v. Commissioner, T.C. Memo. 2002-223, 84 T.C.M. (CCH) 281, 285 (2002).

**[\*21]** IV.    <u>Self-Employed Health Insurance Expense Deduction</u>

Section 162(l)(1) allows a self-employed individual to deduct medical insurance costs for the taxable year. However, this Court has long held that a taxpayer bears the burden of proving entitlement to any deductions.[39] This burden requires the taxpayer to maintain adequate records to substantiate the amount of the deduction.[40]

Mr. Sellers claimed a $15,652 deduction for self-employed health insurance expenses. He provided no documentary proof substantiating the cost of his health insurance. At trial, he claimed he used health insurance records when filling out his 2013 tax forms, but he did not provide those records to the Court. He did not meet his burden of proof to show he is entitled to deduct self-employed health insurance expenses.

V.    <u>Accuracy-Related Penalties Under Section 6662(a)</u>

Mr. Sellers is liable for accuracy-related penalties under section 6662(a). In the notice of deficiency, the Commissioner determined for each year a 20% accuracy-related penalty due to a substantial understatement of income tax or, in the alternative, due to negligence or a valuation misstatement. Section 6662(a) and

---

[39]Rule 142(a); <u>INDOPCO, Inc. v. Commissioner</u>, 503 U.S. 79, 84 (1992).

[40]Sec. 6001; sec. 1.6001-1(a), Income Tax Regs.

**[\*22]** (b)(1), (2), and (3) imposes a penalty on "any portion of an underpayment of tax required to be shown on a return" if the underpayment is due to, among other reasons, negligence, a substantial understatement of income tax, or a substantial valuation misstatement. An understatement of income tax is "substantial" if it exceeds the greater of 10% of the tax required to be shown on the return or $5,000.[41]

"Negligence" includes any "failure to make a reasonable attempt to comply with the provisions of this title."[42] Negligence has been further defined as a "lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances."[43] Additionally, a taxpayer is negligent if he fails to maintain sufficient records to substantiate the items in question.[44]

The Commissioner bears the burden of production as to the penalty.[45] To satisfy this burden, the Commissioner must present sufficient evidence to show

---

[41]Sec. 6662(d)(1)(A).

[42]Sec. 6662(c).

[43]Neely v. Commissioner, 85 T.C. 934, 947 (1985) (quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), aff'g in part, remanding in part 43 T.C. 168 (1964), and T.C. Memo. 1964-299).

[44]See Higbee v. Commissioner, 116 T.C. 438, 449 (2001).

[45]Sec. 7491(c).

**[\*23]** that the penalty is appropriate, unless an available defense exists.[46]  The

penalty will not apply to any portion of an underpayment for which a taxpayer

establishes that he or she had reasonable cause and acted in good faith.[47]

Rule 155 computations will determine whether Mr. Sellers' underpayment

was attributable to a substantial understatement of income tax for either year at

issue.  Regardless, the Commissioner presented evidence establishing that Mr.

Sellers acted with negligence by not maintaining sufficient records to substantiate

items underlying his deductions and nonpassive losses.  Furthermore, we cannot

find that Mr. Sellers had reasonable cause or acted in good faith.  Mr. Sellers works

as an accountant and accounting consultant.  He has expertise in tax, business

formations, and the necessity of maintaining records.  He knew, or should have

known, of his obligation to substantiate the items he reported.  Because he failed to

do so, the negligence penalty applies.

The Commissioner also bears the burden to present evidence that the initial

determination to impose penalties was timely approved in writing by the revenue

---

[46]Graev v. Commissioner, 149 T.C. 485, 493 (2017), supplementing and overruling in part 147 T.C. 460 (2016).

[47]Sec. 6664(c)(1).

[*24] agent's immediate supervisor.[48] The "initial determination" of a penalty occurs the earlier of when the Commissioner issues a notice of deficiency[49] or when the Commissioner formally communicates to the taxpayer his penalty determination.[50]

The supervisor of the revenue agent assigned to Mr. Sellers' case approved imposing accuracy-related penalties against Mr. Sellers before the Commissioner mailed Mr. Sellers a "30-day letter" informing him of those penalties. Accordingly, the Commissioner has met his burden of production regarding these penalties.

To reflect the foregoing,

Decision will be entered under

Rule 155.

---

[48]Sec. 6751(b)(1).

[49]Clay v. Commissioner, 152 T.C. 223, 248 (2019).

[50]Belair Woods, LLC v. Commissioner, 154 T.C. __, __ (slip op. at 4) (Jan. 6, 2020).